## RHINEHART v. RHINEHART

(No. 2023; January 25, 1938; 75 Pac. (2d) 390)

For the appellant, there was a brief by *George F. Guy* and *Walter Q. Phelan* of Cheyenne and oral argument by *Messrs. Guy* and *Phelan.*

For the respondent, there was a brief and an oral argument by *Allen A. Pearson* of Cheyenne.

BLUME, Chief Justice.

On February 6, 1935, the plaintiff, Clara A. Rinehart, filed in the district court of Laramie County her petition for divorce against the defendant, Charles H. Rinehart. The parties will be referred to as in the case below. Plaintiff alleged that they were married on July 17, 1911; that four children were born to them, all of whom are of age except Edith, then sixteen years of age; that the defendant is guilty of cruel and inhuman treatment and has offered such indignities to the plaintiff as to render her condition intolerable; that the defendant is able-bodied and is capable of earning the sum of $287 to $315 per month. Plaintiff accordingly asked for a divorce and that she be awarded such alimony as to the court may seem just, including an attorney fee of $100. On the same day, the parties entered into a stipulation. Counsel for both parties stated at the time of the oral argument in this case that at that time the plaintiff was represented by counsel, and that defendant was not represented at all. The stipulation is as follows:

"It is hereby agreed by and between the parties hereto that the defendant will pay and the plaintiff will accept Sixty Dollars per month and the household and kitchen furniture in the house in full of all alimony, temporary and permanent, and that the plaintiff will

not hereafter claim or assert a claim to any sum in addition to the amount; this is in addition to any money that plaintiff has saved up to this time. The defendant will not claim any of said moneys. The defendant will pay the attorney fee and costs not to exceed Eighty-five Dollars.

"Dated this 6th day of February, 1935."

The defendant did not appear in the action, and on March 11, 1935, a default was entered against him, the plaintiff was decreed a divorce, attorney fees in the sum of $85, and alimony in the sum of $100 per month. At the next term of court, the defendant appeared and moved the court to vacate the decree. The application therefor was subsequently amended, and alleges the following facts: That on March 11, 1935, the decree above mentioned was rendered; that defendant defaulted and failed to answer, solely for the reason that a certain stipulation hereinabove mentioned was entered into and upon which he relied; that defendant also gave to the plaintiff the sum of approximately $500 in cash as well as all household goods, wares and equipment then owned by the parties, which property was worth not less than $500, and that plaintiff agreed to accept the property above mentioned and alimony in the sum of $60 per month; that he had and now has a good defense to the action and refrained from interposing it for the reason above mentioned; that it was the understanding that the stipulation would be submitted to the court and made a part of the record in the cause, and that defendant did not learn that this was not complied with until approximately two months after the entry of the decree; that from March to October, 1935, plaintiff accepted the sum of $60 per month in accordance with the stipulation, but that on December 10, 1935, plaintiff caused a garnishment to be issued upon the defendant's pay from the Union Pacific Railroad Company; that defendant had done everything in his power to make a success of the marriage

of the parties; that plaintiff for a number of years insisted upon living in the state of California and lived there for a year and a half prior to the last separation of the parties, and finally informed the defendant that she would refuse to live with him in Cheyenne; that the defendant has been employed by the Union Pacific Company in Cheyenne for the past twenty years, and that it was impossible for him to go to California; that defendant is unable to state why the terms of the stipulation were not incorporated in the decree and that William C. Kinkead, attorney, who handled the matter, is now deceased; that the property settlement and alimony embodied in the stipulation was a fair and equitable settlement between the parties in the light of the insistence on the part of the plaintiff to live in the state of California, and in the light of the money and other property given to her at the time of her departure; that the plaintiff left for California on March 11, 1935, the date on which the decree was granted, and has ever since resided in that state; that the two older children of the parties reside with her, and are paying board and room to the plaintiff and are contributing in some measure to her support and maintenance. Defendant accordingly asked that the decree of March 11, 1935, be modified so as to require the defendant to pay only the sum of $60 per month, in accordance with the stipulation, or that the decree be vacated and the defendant be given an opportunity to interpose an answer in the suit. The plaintiff demurred to the application, and this demurrer was sustained. From this ruling of the court an appeal has been taken to this court. It may be mentioned in this connection that defendant also filed in said court a petition to modify the decree upon another and a second ground; namely, on account of the changed circumstances of the defendant, alleging that he is now receiving $65 a month less than he received at the time of the decree. That application

was also heard, the court reducing the alimony of $100 per month to $85 per month.

The question in this case is to what effect the contract entered into between the parties had—that is to say, whether the court had a right to ignore it and award alimony in excess of the amount provided in the contract, and whether the court erred in sustaining the demurrer filed herein. It is laid down in 1 R. C. L. 925 that a husband and wife, if they have been separated, or contemplate immediate separation, and in the absence of collusion as to a divorce, may settle their property rights, including the amount which the husband is to pay as alimony. It is said in Galusha v. Galusha, 116 N. Y. 635, 22 N. E. 114, 14 A. S. R. 453, 6 L. R. A. 487, that family settlements are favored. And in Miller v. Miller, 284 Pa. 411, 131 Atl. 236, the court stated that "family settlements are always favored, and when made to settle controversies between husband and wife, will be enforced if legally possible." See also In re Pierce Estate, 123 Pa. Super 171, 187 Atl. 58; Hensley v. Hensley, 179 Cal. 284, 183 Pac. 445. In Young v. Thompson, 227 Mo. App. 1266, 290 S. W. 85, it was said that "the courts recognize the right of husband and wife in a divorce case to settle their property rights out of court by agreement between themselves, and will not without some reason appearing therefor, disturb it." In North v. North, (Mo.) 100 S. W. 582, the Supreme Court of Missouri stated that "the law is too well settled in this state to admit of dispute that husband and wife, in contemplation of separation and divorce may, by valid agreement between themselves, settle and adjust all property rights growing out of the marital relation, including the wife's right of dower and claim for alimony, support and maintenance." Such contracts have frequently been enforced against a husband. North v. North, supra; Young v. Thompson, supra; Phillips v. Phillips, 188 N.

J. Eq. 189, 178 Atl. 265; Pryor v. Pryor, 88 Ark. 302, 114 S. W. 700, 129 A. S. R. 102; Dickey v. Dickey, 154 Md. 675, 141 Atl. 387, 58 A. L. R. 634. In fact, in a number of cases, the details of which we need not examine, it has been held that such contract could not be modified by the court, no matter how unfortunate or burdensome it proved to be. Note 58 A. L. R. 639; Kunker v. Kunker, 230 App. Div. 641, 246 N. Y. S. 118; Phillips v. Phillips, supra; North v. North, supra. There is no claim in the case at bar that the contract entered into in this case is against public policy, but merely that the court had the right to increase the allowance, and we shall, accordingly, for the purposes of this case, accept what is stated in the above authorities as to its validity from the standpoint of public policy.

At common law, a wife was not bound by any contract which she might enter into with her husband in regard to her future maintenance, unless, perchance, it was made through the intervention of a trustee. Winter v. Winter, 191 N. Y. 462, 84 N. E. 382, 16 L. R. A. N. S. 710. She was presumed to be under his power and control. Cowee v. Cornell, 75 N. Y. 91. But that is no longer true, since legislatures have generally, as in this state, given married women full freedom to make contracts. Winter v. Winter, supra; see Sec. 69-102, Wyo. Rev. St. 1931. Notwithstanding that fact, it is stated in 19 C. J. 252 that the court is not bound by the agreement, and may disregard it, especially where it is unfair and inequitable, or the amount is inadequate. And some of the courts have disregarded such contract, although it was free from fraud, mistake or duress, and have made an additional allowance merely on the ground that the provision of the wife was not fair in view of the circumstances; and was inadequate. Sobel v. Sobel, 99 N. J. Eq. 376, 132 Atl. 603; Wheeler v. Wheeler, 167 Okl. 598, 32 P. (2d) 305;

Westfall v. Westfall, 208 Mo. App. 656, 236 S. W. 393; Moog v. Moog, 203 Cal. 406, 264 Pac. 490; Hobbs v. Hobbs, 72 Colo. 190, 210 Pac. 398; Thomas v. Thomas, 222 Ill. 618 (where defendant had failed to comply with it); Kinsella v. Kinsella, (Mo. App.) 60 S. W. (2d) 747. See also Hayhurst v. Hayhurst, 65 N. D. 25, 256 N. W. 413; Stark v. Stark, 28 Ohio N. P. N. S. 36. The same rule of fairness has been stated in other cases in which the court held that it had power to modify the decree for alimony on account of change of condition of the parties. Warren v. Warren, 116 Minn. 458, 133 N. W. 1009; Oakes v. Oakes, 266 Mass. 86, 165 N. E. 17; Lewis v. Lewis, 53 Nev. 398, 2 P. (2d) 131; Shoop v. Shoop, 58 S. D. 593, 237 N. W. 904; Wallace v. Wallace, 74 N. H. 256, 67 Atl. 580; 13 Ann. Cas. 293. In all of the foregoing cases, the question of the fairness was litigated by parties actually in court. The origin of the rule that a court is not bound by any contract between husband and wife seems to be found in the rule of the common law above mentioned, that a wife cannot contract with her husband, and that such contract is collusive and against public policy. Daggett v. Daggett, 5 Paige 509; Moon v. Baum, 58 Ind. 194; Hamilton v. Hamilton, 89 Ill. 349; Adams v. Adams, 25 Minn. 72; Dausman v. Dausman, 7 Mo. App. 165. The first ground is, as stated, no longer tenable; nor is the second in those jurisdictions in which a separation agreement is held not to be against public policy. Notwithstanding that, such contracts have been disregarded, as shown by the cases above mentioned. In doing so, the courts seem to have shifted their ground of decision, basing it upon the fact that the statute gives them power to fix the alimony, and that hence contracts are advisory only, thus relegating the power to contract, also given by the statute, into a secondary position. While incidentally citing cases in which there

was a separate agreement, but where the wife continued to be such, without obtaining a divorce, we do not decide what the law should be in such a situation, for in such instances there enters into account the further rule that a husband must support his wife. When parties are divorced, other factors must be considered. In view of the great number of divorces in our country, the ease with which they are obtained, the fact that in most instances when the wife sues therefor, the husband will not resist it, the courts are today confronted with a social problem which did not exist a generation ago, and which is becoming more and more pressing. The result and the consequences of this social condition —the future of the parties divorced and of their children, the possibility of remarriage and the results of that relation, as well as the welfare of society as a whole, and perhaps other matters, are all factors which must necessarily be taken into consideration, in the absence of a definite and positive statute to the contrary, in fixing the rules of law which should govern in such cases in order to keep the scales of justice even.

Let us now consider some cases in which the wife has been held bound by her contract. See generally 19 C. J. 250, Section 584. In the case of Galusha v. Galusha, 116 N. Y. 635, 22 N. E. 1114, 15 A. S. R. 453, 6 L. R. A. 487, it appears that the husband and wife entered into a separation agreement, whereby the former agreed to pay the wife the sum of $100 per month as alimony. The agreement was made through an intervening trustee, which, however, is now no longer necessary. Winter v. Winter, supra. The wife then brought an action for divorce, and it was granted. She also asked for alimony. The husband set up the contract. The court, deeming the $100 above mentioned to be insufficient, increased the amount to $250 per month. The husband appealed. The contract was held to be

binding, and the award was set aside. The question was discussed at length, the court stating:

"We have, then, a valid tripartite agreement, and a subsequent judgment of divorce rendered, in an action wherein two of the parties to the agreement only are plaintiff and defendant. The plaintiff did not in her complaint ask, as a part of the relief, that the separation agreement be set aside. She did not allege that it had been obtained fraudulently, or by means of duress. In no way whatever was its validity attacked, or a foundation laid which would have empowered a court of equity to set it aside. The subsequent order of the general term, therefore, in directing such modification of the judgment of divorce as would terminate the force and legal effect of this valid separation agreement cannot be sustained. The authority conferred upon the court by the Code, to require the defendant to provide suitably for the support of the plaintiff as justice requires (Code Civ. Proc. §1759), is not so broad and comprehensive as to admit of a construction conferring upon the court power to ignore all existing rules as to parties, pleadings and proof, and arbitrarily set aside a valid agreement, because in the judgment of the court one of the parties agreed to accept from the other a less sum of money than she ought.

"We must now consider briefly whether the trial court should have granted an allowance in addition to the sum which the parties had voluntarily agreed was sufficient for the support of the wife, and which both the wife and trustee covenanted to accept in full for her support and maintenance during her natural life. There are a number of cases where, notwithstanding a voluntary settlement by a husband upon his wife, the court has made an additional allowance, upon the ground that the settlement was inadequate for her support. 2 Bishop, Mar. & Div., § 375, and cases cited. But our attention has not been called to a case in which the court has held that where the wife, by the intervention of a trustee, makes a valid agreement that the settlement is sufficient for her support, and indemnifies the husband against any further payment therefor, the court will make a further allowance while that agreement is in force. The statute authorizes the court, in

the final judgment dissolving the marriage, to require the defendant to provide suitably for the support of the plaintiff as justice requires, having regard to the circumstances of the respective parties. It directs this to be done because, upon the dissolution of the marriage relation, the legal obligation of the husband to support the wife ceases. But for the power thus conferred upon the court the result of the husband's misconduct would be to relieve him from the duty of supporting the wife whom he had wronged. But this authority to protect the wife in her means of support was not intended to take away from her the right to make such a settlement as she might deem best, for her support and maintenance. The law looks favorably upon and encourages settlements made outside of court, between parties to a controversy. If, as in this case, the parties have legal capacity to contract, the subject of settlement is lawful, and the contract, without fraud or duress, is properly and voluntarily executed, the court will not interfere. To hold otherwise would be not only to establish a rule in violation of well-settled principles, but, in effect, it would enable the court to disregard entirely settlements of this character, for, if the court can decree that the husband must pay more than the parties have agreed upon, it is difficult to see any reason why it may not adjudge that the sum stipulated is in excess of the wife's requirements, and decree that the husband contribute a smaller amount. The views expressed lead to the conclusion that the judgment appealed from should be modified by striking out the provision terminating the force and effect of the separation agreement, dated April 30, 1883. It should be further modified by striking out the provision allowing alimony, and, as thus modified, the judgment should be affirmed."

We might here mention incidentally that subsequently the contract mentioned in the foregoing case was attacked directly, and was set aside on account of fraud and duress. Galusha v. Galusha, 138 N. Y. 272, 33 N. E. 1062. In the case of Kunker v. Kunker, 230 App. Div. 641, 246 N. Y. S. 118, the court stated that if a contract is made between husband and wife, "the

courts will not award a different sum." To that effect see also 1 R. C. L. 925; King v. King, 200 Ill. App. 160, 8 N. E. (2d) 375.

In the case of Winter v. Winter, supra—that case upholding a contract against the husband—the court stated of the wife that "she is the best judge of what she needs for her support, and the amount may be fixed and settled by an agreement made after actual separation, without violating any principle of law, or any statute now in existence." In the case of Cain v. Cain, 188 App. Div. 780, 177 N. Y. S. 178, it appears that husband and wife entered into a separation agreement, under which the sum of $2000 was to be paid to the wife in lieu of all alimony. She then brought an action for divorce. The trial court, granting a divorce, did not approve of the contract, but made an award of an additional, weekly, allowance. From that the husband appealed, so that he evidently was actually in court. The award was set aside. The court held that an inadequate allowance to the wife under a contract is not itself sufficient to disregard it. The additional award made by the court was set aside, the court stating in part:

"I do not see how the alimony provision for the wife can be sustained. Such a contract is binding upon both parties, unless set aside or impeached, and that is so, though the marital relations between the parties are terminated by divorce. Galusha v. Galusha, 116 N. Y. 635, 22 N. E. 1114, 6 L. R. A. 487, 15 Am. St. Rep. 453; Greenfield v. Greenfield, 161 App. Div. 573, 146 N. Y. Supp. 865; Benesch v. Benesch, 182 App. Div. 221, 169 N. Y. Supp. 561. And it is not in violation of the Domestic Relations Law (Consol. Laws. c. 14). Winter v. Winter, 191 N. Y. 462, 84 N. E. 382, 16 L. R. A. (N. S.) 710. In the Galusha Case the contract was made through the intervention of a trustee. After the decision upholding the validity of the contract, another action was brought to set it aside. The trustee was made a party to that action and the contract was set

aside. Galusha v. Galusha, 138 N. Y. 272, 33 N. E. 1062.

"The contract here was not made through the intervention of a trustee, but between the husband and wife directly. It is pleaded in the answer as a defense to the demand for alimony. It may be that if a case had been made, the contract could be set aside in this action without resorting to an independent action therefor; but we need not decide that question, as I think no case was made for setting it aside. It is undoubtedly true that a contract for the support of a wife may be set aside at her instance, upon grounds which would be insufficient to set aside a contract not of that character. Hungerford v. Hungerford, 161 N. Y. 550, 56 N. E. 117; Pelz v. Pelz, 156 App. Div. 765, 142 N. Y. Supp. 54.

"But here the only ground for setting it aside is that the provision made thereby for support of the wife is now inadequate. I think that alone is not sufficient. As was said by Judge Vann in the Winter Case:

" 'She is the best judge of what she needs for her support, and the amount may be fixed and settled by an agreement made after the actual separation, without violating any principle of law or any statute now in existence.' "

In the case of Parsons v. Parsons, 23 Ky. L. 223, 62 S. W. 719, it appears that the husband and wife entered into a contract of separate maintenance. Thereafter the wife brought an action for divorce, which was granted. She also asked for alimony. The husband set up the contract as against the petition for alimony. The wife claimed that the contract was obtained by fraud, was signed by her in ignorance of her rights and that it was against public policy. The court, disposing of her claims, and upholding the contract, stated in part:

"There is no proof of fraud in the execution of the contract. Such agreements when fairly made, contravene no public policy and are not void. While the court will not suffer the wife to be overreached by the husband, or sustain a contract prejudicial to her, obtained by him while she is under his domination, this rule does

not apply where they are separated and are dealing at arm's length. There is nothing in the record to impeach this contract, and it is conclusive on the parties."

In the case of Gallemore v. Gallemore, 94 Fla. 516, 114 So. 371, it appears that husband and wife entered into a separation agreement, and the former subsequently sued for, and obtained, a divorce. The separation agreement settled all the property rights of the parties, and also provides that the husband should pay the wife $65 as alimony. The latter part, namely, the agreement as to the payments monthly, was subsequently modified by the parties, the wife agreeing to accept the lump sum of $1000 in lieu thereof. She apparently became dissatisfied with the contract and contended that it was against public policy, and that it was obtained by duress. The court, upholding it, stated in part:

"According to the weight of authority, bona fide agreements relating to alimony or the adjustment of property rights between the husband and wife, though in contemplation of divorce, will be upheld, if not directly conducive to the procurement of a divorce. * * * Other provisions in this contract, when taken with the amendment thereto, relieve the parties each from the other from any responsibility for maintenance or support or from thereafter in any way participating in the division of the estate or property of each other, but we find nothing therein to promote or facilitate the procurement of a divorce. It is true that the parties thereto lived separate and apart after the execution of said contract, but it appears to have been deliberately entered into, and was entirely satisfactory to both parties at the time of execution. The evidence amply supports the finding of the chancellor. There was failure on the part of appellant (the wife) to show that the contract was procured from her by duress."

In the case of Melson v. Melson, 151 Md. 196, 134 Atl. 136, the parties entered into an agreement for separation. The wife agreed to accept the sum of $1050

in full of all alimony and claims against the husband. The contract was fully understood, and perhaps suggested by the wife who refused to live any longer with her husband. Her testimony shows what she thought of the contract, when she stated: "Well, it is the most outrageous piece of business ever put before a woman to sign, but I thought I would rather have the $1000 than have the man." She later brought an action for divorce on the ground of desertion. Notwithstanding the contract, the trial court, granting the divorce, also awarded the plaintiff the further sum of $520 and counsel fees. The decree was reversed, the court stating among other things in connection with the contract:

"The agreement of separation was valid as the agreed equivalent of future maintenance by the husband of the wife, although it was invalid as a contract providing for the relinquishment of the right and duty of cohabitation of the spouses. * * * On the * * * ground * * * that articles of separation when fully performed by the husband, bar her from any other form of maintenance than those agreed in the articles, the chancellor was in error in allowing the wife alimony. Nor should counsel fees for the wife have been allowed, as they were excluded by the terms of the contract." (A number of cases are cited.)

An instructive case herein seems to be that of Herrin v. Herrin, (Mont.) 63 P. (2d) 137, decided in December, 1936. In that case the husband sued for a divorce. The wife answered that she did not want a divorce, but separate maintenance. The husband set up a contract for separation and it was brought into issue in the case. The trial court, denying the divorce, made an award to the wife for alimony. The award was reversed. The contract is not set out, but appears to have made reference to separation and divorce. It was held that while the contract was void as facilitating a divorce, it would be upheld so far as it referred to property rights and alimony, the court saying in part:

"But we think it repugnant to sound principles of equity to permit one to profit by the provisions of such an agreement and then avoid its objectionable parts by the rule mentioned, and we therefor hold the contract severable. * * * The contract is, therefore, held to have been entered into for the purpose of facilitating a divorce, and as to that it is void as contrary to public policy, but as to the property settlement it is valid and binding upon both parties."

These cases, then, hold that a contract between husband and wife, such as entered into between the parties in this case, is binding on both of them, some of them specifically, and the others impliedly, holding that the court has no right to disregard it and make an allowance to the wife greater than that made in the contract. They do not specifically mention that the contract must be fair, from the standpoint of the amount involved, nor do they mention the contrary, except Cain v. Cain, supra. It may be, therefore, and for the purpose of this case we shall assume, that they are not inconsistent with the rule of fairness above mentioned, but may be harmonized therewith, and that they merely go, but they do go, to the extent of holding that unless it is shown and litigated at the time when alimony is granted that the contract is unfair, the court must follow it. We shall not attempt to determine what are the circumstances which should govern the court in saying that a contract is not fair, since the point has not been argued. We refer, however, to the cases mentioned at 30 C. J. 1060 to 1062, and to Melson v. Melson, supra, to Parsons v. Tracy, 127 Wash. 218, 220 Pac. 813, and to Sumner v. Sumner, 121 Ga. 1, 48 S. E. 727.

To test the soundness of the rule of the cases from which we have just quoted, we may consider the cases dealing with the subject of presumption and burden of proof in cases in which the contract is claimed to be unfair. Most of the cases on the subject are collected in 30 C. J. 1061. They are not in harmony. In some

of them it is held that the burden to show that the contract is fair is on the husband. That is held on the theory that, as at common law, the wife is under the power and dominance of the husband, as in Dennison v. Dennison, 98 N. J. Eq. 230, 130 Atl. 463; Ireland v. Ireland, 43 N. J. Eq. 316. That theory, as already noted, cannot be held to be a valid one, in view of the acts of the legislature of this state. Law is not an exact science. While certainty of legal rules is important, law is not absolutely static. It grows and develops as necessity arises and seeks to adjust itself to the needs of society. "Jurisprudence," says Ulpian, "is the knowledge of things human and divine, the science of the just and the unjust." Dig. 1, 1, 10, 2. Constantly aiming, as the law does, at ideal justice, it cannot, in the absence of a positive legislative rule to the contrary, ignore changed conditions and proceed from premises which are no longer sound. The only doubt which can arise in any such case is as to whether or not, in view of the desirability of the certainty of legal rules, the change is sufficiently marked as to justify a departure from a former rule. If such conditions have clearly and markedly changed, the law must proceed from new premises consistent with the changes. Hence decisions founded upon the assumption that a wife is under the dominance of her husband, when that assumption is unrelated to present day realities, "ought not to be permitted to prescribe a rule of life." Winter v. Winter, supra; Oppenheim v. Kridel, 236 N. Y. 156; Cardoza, The Growth of the Law, 105-106. Some courts have cast the burden on the husband on the further theory that a confidential relation exists between husband and wife. Way v. Life Ins. Co., (S. C.) 39 S. E. 742; Mann v. Mann, 135 Okl. 211, 275 Pac. 348. See also Cheuvront v. Cheuvront, 54 W. Va. 171, 46 S. E. 233. But this confidential relation is not apt to be present in a case in which, as here, the wife is on the

point of filing her suit for divorce. Hence the weight of authority is, we think, particularly taken in connection with the cases from which we have quoted, that the contract in such and similar cases will be presumed to be fair, and that the burden is on the wife to establish the contrary. Daniels v. Benedict, 97 Fed. 367; In re Berner, 217 Mich. 612, 177 N. W. 377; Morris v. Patterson, 180 N. C. 484, 105 S. E. 25; In re Pierce Estate, supra; Hiett v. Hiett, 74 Nebr. 96, 103 N. W. 1001; Migala v. Dakin, 99 Cal. App. 60, 277 Pac. 898; Hensley v. Hensley, 179 Cal. 284, 183 Pac. 445; Nelson v. Vassenden, 115 Minn. 1, 131 N. W. 794, 35 L. R. A. N. S. 1167. In the last cited case, the Supreme Court of Minnesota said:

"The parties are presumably able to determine the needs of one and the ability of the other, and when they arrive at an adjustment of property rights, in the absence of evidence of unfairness, such adjustment is, and should be, usually accepted by the court."

In the case of Daniels v. Benedict, supra, Judge Sanborn, reviewing the subject at length, stated in part:

"It will not do to say that all contracts between husbands and wives * * * are ineffectual unless proved aliunde to be just and fair, because the effect of such a rule would be to practically disable parties occupying such relation from making contracts with each other. Agreements between parties in these relations are either presumptively valid or presumptively void. If the former, then the power of such parties to bargain, trade and agree with each other is plenary. If the latter, then their power to contract with each other is practically destroyed. No principle of equity, no rule of law or of morals, which occurs to us, require a decision that the confidential and fiduciary relations of life disable all who enter them from making agreements with each other, or stamp their mutual contracts with the presumption of fraud or invalidity. Such a presumption is unfounded in fact, and runs counter to the common knowledge and experience of men."

And in the California cases above mentioned, the court lays particular stress on the fact that, as in the case at bar, the parties were dealing with each other at arm's length.

The situation in this case, then, is this: The contract is presumed to be fair, just and equitable. The burden to show it otherwise is on the plaintiff. The court, accordingly, should not have disregarded it in the absence of such showing. Still, it had the power to do so. Was the defendant then justified in relying on the contract and make default in the case? It is held by the Kansas City Court of Appeals in Marshall v. Marshall, (Mo. App.) 236 S. W. 378, that he was not, but that he should have appeared. The case of Hobbs v. Hobbs, supra, and Cross v. Cross, 98 Wash. 651, 168 Pac. 168, cited to us by the plaintiff, are not in point for the reason that they do not deal with a motion to vacate, and a default as in the case at bar. In the case of Jacoby v. Jacoby, 245 App. Div. 763, 280 N. Y. S. 611, the syllabus reads as follows: "Defendant held entitled to have her default opened and to appear and answer where from uncontradicted affidavits it appeared that defendant might have a good defense and was induced to refrain from answering complaint by plaintiff's false promises to continue his payment of $40 per week during life of defendant and by his threat to discontinue such payments if defendant defended action." Almost the exact question now before us was before the Supreme Court of Kansas in Wamberg v. Wamberg, 111 Kans. 248, 206 Pac. 889. In that case, to be brief, the defendant in a divorce action answered. Thereafter the parties settled the property rights (that being the second agreement); the wife agreed to ask for no further alimony, and the husband agreed to withdraw his answer, which he did and failed to appear. The court, in disregard of the agreement, awarded the wife an additional amount of $1000 as ali-

mony. At the next term of court the defendant moved the court to vacate the order. The motion was denied. The Supreme Court in reversing the ruling stated:

"The plaintiff suggests that an agreement between the parties concerning alimony was not binding upon the court, citing Blair v. Blair, 106 Kans. 151, 153, 186 Pac. 746. However that may be (and of course reasons may exist for setting aside such an agreement), we think no greater allowance than that provided by the last stipulation should have been made without giving the defendant notice and an opportunity to be heard concerning it, since he was justified by its terms in remaining away under the assumption that the stipulation would control."

This case is in line with and carries out the principle of the other cases from which we have heretofore quoted, and no less an opportunity than therein mentioned should be given to the defendant in this case.

The judgment appealed from herein is accordingly reversed, with direction to overrule the demurrer filed herein and for further proceedings not inconsistent with this opinion.

*Reversed, with direction.*

RINER and KIMBALL, JJ., concur.