**Melvin M. DAVID, Appellant (Plaintiff),**

v.

**Marilyn M. DAVID, Appellee (Defendant).**

No. 86–24.

Supreme Court of Wyoming.

Sept. 10, 1986.

---

David R. Hansen, Jackson, for appellant.

R. Michael Mullikin and Phelps H. Swift, Jr. of Mullikin, Larson & Swift, Jackson, for appellee.

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

URBIGKIT, Justice.

After finding a property settlement agreement binding on the parties to a divorce proceeding, the trial judge incorporated into the resulting decree an additional provision that a lien be recorded to secure payments owed by the husband to the wife after she quitclaimed her share of their ranch real estate to him. The husband contends on appeal that the lien was improper and an abuse of discretion in modifying a property settlement separation agreement, which contention is now rejected as we affirm.

Melvin and Marilyn David, married for 27 years, raised four children and acquired a ranch in Sublette County, and separated in 1984. In March, 1985 they entered into a property settlement agreement to divide their real and personal property which provided that Marilyn would quitclaim her interest in the ranch property to Melvin, and that Melvin would assume liability for taxes and mortgages against the property, and pay Marilyn $111,150 in 50 semiannual installments. The agreement was drafted by Melvin's attorney, and signed by Marilyn without benefit of separate counsel, even though the attorney had recommended that she seek independent legal advice. Pursuant to the terms of the settlement agreement, she executed the quitclaim deed, and while the divorce proceeding was pending, it was recorded.

Melvin David filed a divorce complaint in Teton County and asked the trial court to approve the settlement agreement. Marilyn David, then represented by counsel, counterclaimed, contending that she had signed the property settlement agreement without understanding its meaning or consequences and that it constituted an unfair and inequitable property division. The trial judge ruled after trial hearing that the settlement agreement was binding and granted the divorce. The judge also then requested that counsel brief the issue of the trial court's authority to impose a lien on the property for the security benefit of the wife to assure the settlement agreement payments, and in the subsequent written decree imposed the lien to be filed in Sublette County on the real estate quitclaimed to the husband.

Melvin David appealed and raises as issues whether the court's imposition and its recordation of a lien upon appellant's ranch, as transferred to him in divorce settlement agreement, was proper. Appellee similarly phrases the issue of the case for our review.

It is firmly established that the trial court has great discretion in dividing marital property, *Barney v. Barney*, Wyo., 705 P.2d 342 (1985); *Paul v. Paul*, Wyo., 616

P.2d 707 (1980), and a trial court's discretion will not be disturbed except on clear grounds. *Piper v. Piper*, Wyo., 487 P.2d 1062 (1971). These rules are consistent with the legislature's decision that "the court shall make such disposition of the property of the parties as appears just and equitable." Section 20–2–114, W.S. 1977, 1986 Cum.Supp. This court will not adjust a property settlement incorporated into a divorce decree by a judge absent a clear abuse of discretion—such abuse as would shock the conscience of the court. *Grosskopf v. Grosskopf*, Wyo., 677 P.2d 814 (1984); *Dennis v. Dennis*, Wyo., 675 P.2d 265 (1984).

It is also firmly established that "[p]roperty settlement agreements entered into by the parties prior to a divorce action are generally recognized and given force and effect in the decree," *Prentice v. Prentice*, Wyo., 568 P.2d 883, 886 (1977), and that such agreements are favored by the courts. *Clauss v. Clauss*, Wyo., 459 P.2d 369 (1969); *Beard v. Beard*, Wyo., 368 P.2d 953 (1962).

As a corollary of both rules the confluence effect is that even though property settlements are favored by the courts and are generally recognized in Wyoming, the parties cannot oust a court's statutory duty to "make such disposition of the property of the parties as appears just and equitable" by entering into a property settlement agreement which the judge cannot in good conscience approve and adopt when granting a divorce. *Leighton v. Leighton*, 81 Wis.2d 620, 261 N.W.2d 457 (1978); 24 Am.Jur.2d Divorce and Separation § 819. This is especially true in this case, where the wife was not represented by separate counsel at the time she signed the property settlement agreement and quitclaimed her share of the ranch to her husband.[1]

Appellant points out that this court has held that:

" * * * Agreements such as were entered into by defendant and plaintiff are favored by the courts * * *. Hence it would seem that if the agreement were entered into voluntarily and by competent persons and if the contract were not against public policy or against the best interest of the children, the only proper course for the court was to enforce it, or, rather, not to interfere with it." *Beard v. Beard*, supra, 368 P.2d at 955.

In that case the former Mrs. Beard was attempting to modify the decree of divorce several months after it had been entered— after the trial court had expressly adopted the agreement as being fair and equitable. In *Clauss v. Clauss*, supra, this court upheld two property settlement agreements entered into by the parties prior to commencement of the divorce action. But there again the court expressly decreed that the agreement constituted, "a true, fair and equitable distribution and division of the parties' property." *Clauss v. Clauss*, supra, 459 P.2d at 375. See also *Pavlica v. Pavlica*, Wyo., 587 P.2d 639 (1978).

In *Rinehart v. Rinehart*, Wyo., 75 P.2d 390 (1938), this court reversed a trial judge who altered the alimony provision of the parties' stipulation prior to entering the divorce decree. The husband had defaulted and failed to answer the divorce complaint, assuming that the stipulation which he and his wife had signed would be accepted by the trial judge. When the trial judge refused to modify or vacate the divorce decree and allow the husband to be heard concerning it, the husband appealed. The holding in *Rinehart* appears to be that the husband's alimony payments should not have been increased without giving him an opportunity to be heard and that the hus-

---

1. Although an attorney cannot require his client's spouse to seek separate legal advice before signing a settlement agreement, we encourage lawyers to strongly advise the client's spouse to review the agreement with separate counsel before signing. Several rules of ethics relate to representation or advising when a conflict of interest relationship can be inferred in marital case representation. See Rule 20, Amended Rules Adopted by the Supreme Court of Wyoming Providing for the Organization and Government of the Bar Association of the Attorneys at Law of the State of Wyoming.

band was justified in failing to answer and in assuming that the stipulation would control. However, the court also reached the issue of whether the court had the right to ignore the parties' stipulation and award alimony in excess of the amount provided in the agreement. The court adopted the approach that:

"* * * The contract is presumed to be fair, just, and equitable. The burden to show it otherwise is on the plaintiff. The court, accordingly, should not have disregarded it in the absence of such showing. Still, it had the power to do so." 75 P.2d at 397.

The case at bar is not an alimony case, and, unlike *Rinehart,* Melvin and Marilyn David were both present at trial. But *Rinehart* illustrates the weight to be placed on settlement agreements and the restraint which a trial judge should exercise in modifying the terms of an agreement. To avoid making the parties' agreement "an exercise in futility," *Pavlica v. Pavlica,* supra, 587 P.2d at 641, the trial judge should avoid rewriting the entire agreement, and should make only those alterations which will render the parties' agreement just and equitable. However, after the decree of divorce is granted, modification of the property settlement agreement will not be allowed absent a clear abuse of discretion. *Grosskopf v. Grosskopf,* supra.

 In this case, the trial judge held that the settlement agreement entered into by the parties prior to divorce was binding on them, and added in the decree the lien on the husband's ranch, to secure the payments due to the wife. We find that it was within the trial court's sound discretion to add this term to the husband's obligation. Section 20–2–114. Since property division provisions of divorce decrees are rarely modified, the judge, as arbiter of what is a just and equitable property division, must satisfy himself that his order will continue to be fair and just long after the decree is entered. The trial judge in this case felt that a just and equitable property division should include the amendment for the additional security for the wife that she would be paid for property she had quitclaimed to her husband, in accord with the settled agreement for property division. The parties could have placed the deed to the wife's share of the ranch in escrow until the husband's payment obligations were met, but because they did not provide in their property settlement agreement a method of securing the husband's indebtedness to his wife, the judge provided that security in the decree.[2]

In the decree of divorce, the trial judge imposed the lien on the ranch property to secure the payments due to Marilyn by the terms of the settlement agreement. Other courts have in similar circumstances granted the wife a security interest to insure that the husband's annual installment payments will be made. *Burleigh v. Burleigh,* 200 Mont. 1, 650 P.2d 753 (1982). See also *In re Marriage of Valley,* Colo.App., 633 P.2d 1104 (1981); *In re Marriage of Garst,* Mont., 669 P.2d 1063 (1983); *In re Marriage of Brown,* 179 Mont. 417, 587 P.2d 361 (1978); and *Chrane v. Chrane,* 98 N.M. 471, 649 P.2d 1384 (1982).

In *Ridgway v. Ridgway,* 94 N.M. 345, 610 P.2d 749 (1980), the trial judge imposed a lien on the separate property of the husband to secure the amount of community property due to the wife. The New Mexico Supreme Court agreed that the lien was proper:

"* * * [U]nder its inherent power, the court may, nonetheless, impose a lien on separate property as security for the

---

2. Since the lien is court ordered, amendment or modification in a subsequent proceeding for exigent business requirements would not be subject to the nonmodification rules for agreements of property division mutually settled by the parties. *Ulrich v. Ulrich,* Wyo., 366 P.2d 999 (1961).

Obstinacy after divorce is ill-justified when the difficult problems of financing intervene in the cruel economics of present agriculture depression. Unjustified noncooperation will justify the stern contemplation of the divorce court serving in the mold of a court of continuing equity jurisdiction.

debt owed. The trial court in no way changed the status of appellant's separate property nor vested title in appellee by imposition of the lien." 610 P.2d at 750.

■ We consequently determine that the district court can, as a matter of discretion, properly impose a lien on the property of one spouse to secure a debt owed to the other spouse as an adjunct to divorce settlement whether or not supplementary to terms of any settlement agreement mutually executed by the parties.

The question which may remain is whether or not an "equitable lien," as labeled in the divorce decree, is the proper term for the security interest imposed. Regardless of the terminology used by the judge in the divorce decree, the decree gives rise to an instrument of encumbrance upon the ranch property of Melvin David. Upon default of any payment due to Marilyn, she may invoke her status as a lienholder and foreclose on her interest in the payments on the ranch. We would simply classify the security interest imposed by the trial judge as a lien whereby Marilyn David's security interest in the property provides her with rights akin to those of a mortgagee, constituting a security interest in the real estate previously owned jointly.

■ Finally, appellant questions whether it was proper for the trial judge to provide that the divorce decree should be filed in the Sublette County real estate records. Judgments affecting title to real property are to be recorded in the county clerk's office of the county wherein the property is situated, § 1–16–301, W.S.1977, to serve as notice to the world of the encumbrance. *Remilong v. Crolla,* Wyo., 576 P.2d 461 (1978). A significant purpose of the recording is to create a security interest, 53 C.J.S. Liens § 1a, afford notice, and establish lien priority by recording. 53 C.J.S. Liens § 10.

Finding no error which merits reversal, we affirm.