No. 38,710

BEATRICE MARTIN PECK, *Appellant,* v. MARTHA MARTIN HORST, *Appellee.*

(249 P. 2d 653)

Opinion filed November 8, 1952.

*Henry H. Asher,* of Lawrence, argued the cause, and *Myron S. Steere,* of Ottawa, *Clarence M. Gorrill* and *Alan F. Asher,* both of Lawrence, were with him on the briefs for the appellant.

*Basil W. Kelsey,* of Ottawa, argued the cause, and *Robert A. Anderson* and *Richard C. Byrd,* both of Ottawa, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PRICE, J.: This was an action to cancel and set aside a written instrument denominated "VOTING TRUST AND MANAGEMENT AGREEMENT" (hereinafter referred to as agreement) on the grounds (1) it is inequitable, unconscionable and unfair; (2) that it was executed at a time when plaintiff was dangerously sick, suf-

fering from virus pneumonia and running a high temperature, and was under the influence of sedatives and drugs administered by her physician, thereby being incompetent and incapable of considering or executing the same; (3) that its execution was brought about through intimidation and duress and was not the free act and deed of plaintiff; and (4) that its terms violate the provisions of the corporation code of Kansas and is therefore wholly null and void.

The lower court sustained defendant's special demurrer to and motion to strike all of the allegations of the third ground for relief set out in the second amended petition (hereinafter referred to as the petition) relating to duress, and overruled plaintiff's demurrer to the answer and her motion for judgment on the pleadings.

Plaintiff has appealed from each of those three rulings.

The petition, which is quite lengthy, alleges substantially the following factual background:

Plaintiff, a widow, is a resident of Ottawa, and defendant resides in Sioux City, Iowa. (At the oral argument we were advised they are sisters.) The National Sign Company is a corporation organized and chartered under the laws of Kansas, with its place of business at Ottawa. Its capital stock consists of 450 shares of the par value of $100 each. Plaintiff is the owner of 300 shares, while defendant is the owner of the remaining 150 shares. By virtue of her ownership of the majority of the stock plaintiff had the active management, supervision and control of the company, and as president thereof received a salary of $7,500 per year. It is alleged that the company has at all times been operated in an efficient, profitable and proper manner under the direct supervision of plaintiff.

The petition then alleges, in the language of the pleader, a number of the provisions of the agreement, but, as a copy of the same is attached to the petition and made a part thereof, we summarize directly from the instrument itself.

The agreement is dated December 7, 1950, and was executed by plaintiff as party of the first part, defendant as party of the second part, and John B. Pierson, Basil W. Kelsey and Homer J. Henning, all of Ottawa, designated as trustees, parties of the third part. After a recital of the ownership of the stock of the company (concerning which there is no dispute) and of the fact that irreconcilable differences had arisen between plaintiff and defendant concerning the management of the company, it states that in order to secure con-

tinuity and stability of policy and management plaintiff and defendant had agreed to assign to and deposit all of their stock with the three trustees above named. The trustees are designated as voting trustees and are given full right to vote the shares of stock and control the management of the company in the same manner as if they were the owners thereof, including, but not limited to, the right to elect directors and officers of the company, determine all policies, employ and discharge employees, fix all salaries, declare dividends, amend the bylaws, enter into all contracts, and to do all other things requisite for the proper operation and management of the company, by a majority vote, for the benefit of first and second parties who remain the beneficial owners of the stock, as heretofore related. It further provides that the three named trustees shall constitute three of the four directors provided by the bylaws, and that one Curby should be the fourth director, subject to the control of the trustees.

The agreement then recites that Pierson was named and selected by plaintiff, that Kelsey was named and selected by defendant, that Henning was selected by Pierson and Kelsey, and that plaintiff and defendant retain the right at any time to discharge her respective trustee upon written notice being given to all parties, and that in such event a successor trustee is to be appointed by the judge of the district court of Franklin county. It further provides that the agreement is to remain in full force for a period of ten years from the date thereof unless revoked by the mutual consent of plaintiff and defendant.

It is provided that each of the voting trustees be paid the sum of $100 per month or a one-fifteenth of the corporate net profits after income taxes, whichever is the greater, and that they be reimbursed for actual expenses.

By the provisions thereof plaintiff and defendant specifically agree to withdraw from the management and control of the company except through her respective trustee, and each is prohibited from going upon the premises occupied by the company except with the approval of and in company with the trustee designated by the other party.

Then appears a recital of the ownership of the real estate occupied by the business, being two-thirds in plaintiff and one-third in defendant, and of their agreement to lease the same to the company for the term of the agreement at a rental of $600 per month, payable $400 per month to plaintiff and $200 per month to defendant.

Following this is a recital of the fact that an audit of the books and records of the company discloses that plaintiff is indebted to the company in the sum of $14,425.65; that she shall repay such amount to the company within five days; that the cost of the audit be borne by the company, and that it was made by Henning, the third trustee, at the instance of defendant.

Finally, it is provided that certain moneys now owed by the company to plaintiff and defendant be paid to them out of the earnings of the company; that during the life of the agreement no salary whatever shall be paid to either plaintiff or defendant; that payments to them shall be limited to the rentals above mentioned and such dividends as may be declared by the trustees and directors, and that any sale or gift of their beneficial interests in the company made by plaintiff or defendant during the life of the agreement is to be subject to the terms thereof.

As her first ground for relief plaintiff's petition alleges that on its face the agreement is unconscionable, inequitable and calculatedly unfair, and is in effect a complete confiscation of her property and voting rights in the company; that it deprives her of the presidency and management thereof and of her salary of $7,500 per year, and that the agreement should in equity and good conscience be set aside and held for naught.

As her second ground for relief it is alleged that for some time prior thereto, and on the date she signed the agreement, plaintiff was seriously ill and confined to her home under the care of a physician, suffering from virus pneumonia, and was under the influence of various injections and drugs administered by her physician, all of which resulted in her being in a confused, uncertain, depressed and incompetent state of mind, rendering her incapable of knowing or understanding the full contents, purport, extent and effect of the agreement, and for such reason it should be set aside and held for naught.

As a fourth ground for relief the petition alleges that in numerous respects the agreement violates and is repugnant to provisions relating to the management and control of private corporations set forth in chapter 17, G. S. 1949, commonly known as the corporation code. As will later appear, we consider it unnecessary to take up and discuss this latter ground for relief.

We turn now to the third ground for relief, to which defendant's special demurrer was sustained, and all of which was stricken from the petition on defendant's motion. These allegations relate to

alleged intimidation and duress, thus rendering plaintiff's execution of the agreement as not being her free act and deed, and cover nine pages of the abstract. A brief summary of those allegations is as follows:

Basil W. Kelsey was, at all times material, the attorney for defendant, and Homer J. Henning was a certified public accountant employed by defendant and represented her interests. Mr. DeWitt, an attorney of Sioux City, Iowa, also represented defendant. John B. Pierson was the attorney for plaintiff and employed to represent her interests.

On or about November 1, 1950, without any previous demand or request having been made upon plaintiff as president and manager of the company for an examination and audit of its books, and without any refusal on her part for such inspection and audit, and for the purpose of intimidating plaintiff, an *ex parte* injunction suit was filed in the district court of Franklin county, as a result of which an order was made permitting defendant and her attorneys and auditor to examine and audit the books, and that Henning, acting on behalf of defendant, made such audit.

On November 16, 1950, a meeting was held in the office of Mr. Ben Bowers, who, on that particular occasion at least, represented plaintiff. Kelsey, DeWitt, defendant's husband, plaintiff and Bowers were present. At this meeting Kelsey and DeWitt, acting for and representing defendant, charged that plaintiff had been guilty of irregularities with respect to the management of the company and threatened to bring a suit for the purpose of placing the company into receivership if she did not accede to their demands for a reorganization of the company by 1:00 p. m. of that day. They also "commented" concerning the "Federal Income Tax authorities." Upon being asked by Bowers to explain just what acts or deficiencies with respect to the management of the company they claimed she was guilty, they refused to specify and stated they would tell her nothing, all of such threats and conduct being calculated and designed to put plaintiff in fear and under compulsion.

On November 20, 1950, plaintiff called the husband of defendant by long distance telephone in an effort to discuss the matter, during which conversation he, as agent of and acting in behalf of defendant, told plaintiff that she had been guilty of misappropriation of the funds of the company, that the matter was in the hands of defendant's attorneys and would stay there, all of which charge was

calculated and designed to put plaintiff in fear and under compulsion.

On November 24, 1950, upon request for the same being made by plaintiff, Henning, the auditor, refused to advise her of the details of the audit, but did advise one Curby, a friend and adviser of plaintiff, that as a result of his audit he had determined that plaintiff was indebted to the company in the sum of approximately $15,000. As the result of this, and without having seen the audit or being advised of the details thereof, but in order to prevent the threatened suit for a receivership, plaintiff paid to the company the sum of $15,000.

On November 28, 1950, Pierson and Henning brought to the office of plaintiff a purported trust agreement and started to read the same to her. When she learned from such reading that it was the purport and intent of the instrument to deprive her of her office as president and manager, and to place the affairs of the company in the hands of trustees, she refused to hear any further reading of it and stated that she would have nothing to do with it.

On December 5, 1950, while plaintiff was ill and confined to her bed with virus pneumonia, Pierson came to her bedside and started to read the alleged voting trust agreement and advised her that he, under its terms, would act as her trustee, and that Kelsey would act as trustee for defendant. Plaintiff then stated to Pierson that she did not want him to act as any trustee for her under any circumstances, that the whole instrument was obnoxious and unfair, and that she would have nothing to do with the execution of it. Pierson then replied that she would have to have him as her trustee, otherwise the judge of the district court would appoint someone to act who might not be familiar with or capable of running the business. Plaintiff persisted in her attitude and refused to sign or agree to such an instrument. It is alleged that all of such proceedings on the part of Pierson were calculated and designed unduly to influence plaintiff, to put her under duress and compulsion, and to result in personal financial advantage to Pierson.

On December 7, 1950, while plaintiff was still dangerously ill, confined to her bed and running a high temperature, under the influence of sedatives administered by her physician, and thus in a confused and uncertain state of mind and incapable of giving coherent and considered attention to business matters, Pierson and Henning, together with one Haley, a notary public, came to her home and laid before her the written agreement in question. On

account of her illness she was unable to read it, whereupon Pierson purported to read it to her and demanded that she sign and execute it, at the same time threatening her that if she did not do so defendant and her attorneys would throw the company into receivership, and in any event would oust plaintiff from the management thereof. It is further alleged that at all times during the course of these events Pierson and Henning were well aware of the fact the company was in good and solvent financial condition; that during all of the negotiations Pierson was motivated by personal gain to himself, which, under the very terms of the agreement, would amount to a sum of not less than $12,000, and that such course of conduct on his part was brought about through the efforts of defendant, her attorney and agents, to assist them in their nefarious designs to wrest control of the company from plaintiff.

And, finally, it is alleged that plaintiff's signature to the agreement was obtained at a time when, due to her physical and mental condition, she was incapable of a proper understanding of the full import and effect thereof, and was obtained as a result of the threats and intimidations heretofore mentioned, and was not her own free act and deed.

As before stated, defendant's special demurrer to and motion to strike all of the allegations of this third ground for relief were sustained by the trial court.

At the outset defendant questions whether such ruling is reviewable in this court, relying on *Krey v. Schmidt,* 170 Kan. 86, 223 P. 2d 1015, where it was said that a special demurrer, which is in effect a motion to strike, rests in the sound discretion of the trial court, and a ruling thereon is not appealable until final judgment unless it affects a substantial right and in effect determines the action.

The determination of whether the cited rule applies to the situation here presented obviously includes the determination of the question whether the stricken allegations state a cause of action for duress, for if they do, and if plaintiff should succeed in proving such allegations to the satisfaction of the trier of the facts, it would, of course, in effect determine the action. The question is therefore reviewable.

Counsel have filed exhaustive briefs covering the subject of duress. The authorities cited have been examined, but at this stage of the case we think no good purpose would be served by a discussion of them. We are dealing with mere allegations of a peti-

tion, not with facts established by proof. Prior motions to make portions of this ground for relief more definite and certain are not abstracted and neither are the rulings thereon. However, be that as it may, we think it cannot be said that the allegations in question, considered in their entirety, do not state a cause of action for duress. In our opinion defendant's special demurrer and motion to strike were erroneously sustained.

There remains, then, the question whether plaintiff's demurrer to the answer and her motion for judgment on the pleadings were properly overruled. In the consideration of this question attention must be given to the effect of our decision just announced, and also to the contents of the answer.

Defendant's special demurrer and motion to strike all of the third ground for relief, heretofore discussed, were sustained on December 14, 1951. The answer, which was filed on January 3, 1952, admits the residence of the parties, the incorporation and beneficial ownership of the shares of stock of the company, the execution of the agreement in the form as attached to the petition, and that the trustees named therein are the presently acting trustees thereunder. These admissions are followed by a general denial of each and every other material allegation of fact contained in the petition. By way of further answer it alleges that subsequent to the execution of the agreement plaintiff ratified and confirmed the same by abiding by all of its terms and conditions and by accepting dividends declared by the trustees, together with all of the benefits accruing to her under the agreement, all to her personal financial gain and benefit.

Plaintiff vigorously contends that, notwithstanding the fact the answer contains a general denial, since it admits the execution of the agreement in the form as attached to the petition, her demurrer to the answer and her motion for judgment on the pleadings should have been sustained because the terms of the admitted agreement violate certain provisions of the corporation code relating to the management and control of private corporations.

As we view the situation, the question really is not before us at this time—for several reasons. One is that the pleadings are not even framed and the issues thus joined. When the answer was filed all of the allegations of the third ground for relief, based on alleged duress, had been stricken from the petition. They were no part of it and the answer did not go to those allegations. The effect of our decision is to reinstate them in the petition, and, under any

theory of the case, defendant is entitled to amend the answer as filed or to file an entirely new and different one if she so desires.

Thus, it can readily be seen that plaintiff really is in the position of asking this court to review rulings on her demurrer and motion for judgment on the pleadings, both of which were directed to the answer, when, as a practical matter, actually no answer to the petition as it now exists has ever been filed. We cannot do so.

From what has been said it therefore follows that the judgment of the lower court sustaining defendant's special demurrer and striking all of the allegations of the third ground for relief is reversed with directions to reinstate such allegations in the petition.

WEDELL, J. (concurring in part and dissenting in part): I concur in the ruling that the allegations of duress contained in the petition are sufficient as against the special demurrer. I am also willing to say the ruling on the motion for judgment on the pleadings is not properly reviewable. I do not agree the ruling on plaintiff's demurrer to defendant's answer is not here for review. That demurrer challenged the legal validity of the purported voting trust agreement under our corporation code and the legal effect of allegations intended to show subsequent ratification of the agreement. As I see it the ruling on that demurrer presented purely questions of law and it is so argued by the parties. I think the ruling is properly here for review.