No. 39,258

BEATRICE MARTIN PECK, *Appellant,* v. MARTHA MARTIN HORST, *Appellee.*

(264 P. 2d 888)

Opinion filed December 12, 1953.

*Henry H. Asher,* of Lawrence, argued the cause and *Myron S. Steere,* of Ottawa, and *Clarence M. Gorrill* and *Alan F. Asher,* both of Lawrence, were with him on the briefs for the appellant.

*Basil W. Kelsey,* of Ottawa, argued the cause and *Robert A. Anderson* and *Richard C. Byrd,* both of Ottawa, were with him on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This is an action to cancel an alleged voting trust and management agreement. The appeal is from an order of the trial court overruling plaintiff's demurrer to defendant's answer.

This is the second time the action has been in this court. (See *Peck v. Horst*, 173 Kan. 498, 249 P. 2d 653.) In that appeal the trial court sustained the demurrer of defendant to one of the grounds for relief pleaded in the petition. While the appeal from the order was pending the defendant filed her answer. Thereupon the plaintiff filed a motion for judgment on the pleadings and a demurrer to the answer. The trial court overruled both. Thereupon the plaintiff appealed. Hence this court had before it two appeals, one from the order of the trial court sustaining defendant's demurrer to one of the grounds for relief pleaded in the petition, and the other from the order of the trial court overruling the plaintiff's demurrer to the answer and her motion for judgment. Both appeals were submitted on November 8, 1952. We reversed the trial court with respect to the order sustaining defendant's demurrer and ordered the allegations as to that ground for relief reinstated in the petition. We pointed out that with these allegations reinstated in the petition the defendant had never had an opportunity to answer the petition as it stood with these allegations in it and we would not consider a demurrer to the answer under such circumstances. When the case reached the trial court pursuant to our mandate the defendant filed an amended answer. Plaintiff's motion to make this answer more definite and certain was sustained in part and overruled in part. To defendant's second amended answer, the plaintiff filed a demurrer on the ground that it did not allege facts sufficient to constitute a defense to plaintiff's cause of action. This demurrer was overruled. Hence this appeal.

The appeal raises substantially the same questions raised in the second appeal in the former case, upon which we declined to pass. (See *Peck v. Horst*, supra.)

The second amended petition alleged that on July 16, 1948, Beatrice Martin Peck owned 300 shares of stock in the National Sign Company and defendant Martha Martin Horst owned 150; that Peck owned control and as active manager received an annual salary of $7,500; that she operated the business in an efficient, profitable manner; that relying on an audit of one Henning she paid the cor-

poration $15,000; that thereafter and on December 7, 1950, she signed an alleged voting trust and management agreement, a copy of which was attached to the petition; that the agreement provided in terms for three named persons to act as trustees for the management, having voting power and control of the corporation for a period of ten years, and provided for an assignment and transfer of all plaintiff's stock to these trustees to vote and control the company; that the agreement provided each trustee should receive $100 a month, or collectively one-fifth of the net profits annually; that the instrument further provided that plaintiff should not be prohibited from disposing of her stock but such should be subject to the terms of the agreement; that it provided no salary should be paid to Peck from the date of the agreement and that plaintiff should not go upon the property of the company.

The petition further alleged that immediately after the execution of the agreement the trustees changed all the locks on the premises so that plaintiff was forbidden to go upon the premises; that the action was brought for the purpose of setting aside the alleged voting trust and management agreement.

The first ground upon which plaintiff alleged the agreement should be set aside was that it was unconscionable and in effect a complete confiscation of her property rights; the second was that it was executed by her at a time and under circumstances in which she was sick and mentally incompetent and under the influence of various injections and drugs; third, that it was executed by her under threats and duress, in that Basil W. Kelsey was during all times the attorney for defendant Horst; Henning was a certified public accountant employed by Horst and represented her interests and Virgil DeWitt represented Horst; that John B. Pierson was retained by plaintiff to represent her, but on account of financial advantages that would accrue to him by reason of his appointment as trustee failed to properly protect her rights; that Horst was desirous of obtaining control of the corporation from plaintiff and Kelsey, DeWitt and Henning desired to carry out her wishes. The petition then set out details of the manner in which the duress was carried out. We are not concerned with these details in this opinion. The fourth ground upon which plaintiff alleged the agreement should be canceled was that if it was not unconscionable and even if it had been executed by her at a time when she was competent and not under duress it was *ultra vires* and void and in derogation of the

statutes of Kansas, some seven different respects in which the agreement violated the statutes were alleged, that is, G. S. 1949, 17-3102, 17-3103, 17-3106, 17-3310, 17-3307, 17-3308, all being sections of the corporation code.

The prayer was that the agreement be canceled with the same effect as if it had never existed.

The agreement, a copy of which was attached to the petition, was between Beatrice Martin Peck, widow, party of the first part, Martha Martin Horst, party of the second part, and Pierson, Kelsey and Henning, parties of the third part. It first recited that irreconcilable differences had arisen between Peck and Horst and that the trustee had consented to act under the agreement. It provided that first and second parties agreed to and did assign and transfer their stock to the trustees they to have for the life of the agreement the right to vote it in the same manner as if they were the owners including but not limited to the right to elect directors and officers, determine policies, employ and discharge employees, fix all salaries, declare dividends, amend the bylaws, enter into contracts and do all things requisite for the proper operation of a corporation, but for the benefit of first and second parties who remained the beneficial owners of the stock.

The agreement then recited that the articles of incorporation provided for four directors and it was agreed that the trustees, Pierson, Kelsey and Henning, should constitute three of such directors and Ralph H. Curby should constitute the fourth director; that Pierson was named by Peck, Kelsey by Horst and Henning was selected by Pierson and Kelsey and either the first or second party could discharge her trustee, whereupon a trustee to take the discharged trustee's place should be named by the judge of the district court and this appointed trustee should then select a third trustee; that in the event of the failure of the trustee appointed by the first and second parties to agree, then it was agreed that the judge of the district court should appoint the third trustee; that the agreement might be revoked upon mutual consent of first and second parties; that any trustee might resign at any time by giving notice; that during the life of the agreement the trustees should be residents of Ottawa and not related by blood or marriage to either the first or second parties; that a vacancy in any of the trustees should not in any manner terminate the agreement; that the trustees should be paid from the funds of the corporation $100 per month or one-

third of twenty percent of the net profits after income taxes; that the trustees should exercise their best judgment but should not be individually liable with respect to any action taken pursuant to his vote so cast; that the first and second parties agreed to withdraw from management and control of the corporation and that neither the first or second parties should go upon or around the premises except in company of one of the trustees; that the real estate occupied by the company owned two-thirds by Peck and one-third by Horst was leased to the company for $600 a month, $400 to be paid to Peck and $200 to Horst; that an audit had been made of the books of the company by Henning at a cost of $829.50, which revealed that the first party was indebted to the company in the amount of $14,425.65, and it was agreed the company should pay for the audit and the first party should pay her indebtedness to the company; that the company should make no loans but might borrow money to cover notes of the corporation and the rights of the first and second parties should be limited to their beneficial interest; that there was owed to the first party $6,561.92, and to the second party $3,280.96, which should first be paid from earnings of the company before any dividends should be paid; that the first and second parties might sell, bequeath or give away their beneficial interests, but such should be subject to the agreement; that no additional stock could be issued or sold without mutual consent of the first and second parties and the trustees should have no right to sell or assign the shares of stock placed in their names.

The second amended answer of defendant first admitted the residence of the parties; second denied generally all the allegations of the petition, whether in the affirmative or the negative; third, alleged that on the date the agreement was signed plaintiff represented that her stock certificate had been misplaced and that when it was found it would be promptly transferred in accordance with the agreement and defendant in reliance upon plaintiff's agreement transferred and assigned to the voting trustees her 150 shares and the certificate thereof was canceled; that in the agreement Peck assigned her shares to the trustees in the following words:

"The first and second parties do hereby agree to, and they do hereby assign and transfer all of their respective shares of stock in National Sign Company, Inc., to the third parties, to be held by them in the following title: John B. Pierson, Basil W. Kelsey and Homer J. Henning, voting trustees under the terms and conditions of one certain agreement dated December 7, 1950."

And defendant believed such constituted a valid agreement and if

the certificate was in possession of plaintiff, then defendant was entitled to an order directing plaintiff to transfer it to the trustees; that on December 12, 1950, there was endorsed upon the stub of Certificate No. 1 issued to Peck for 300 shares of stock a motion that:

"Stock Certificate #1 is presently lost but by written Agreement Dated December 7, 1950 the shares of stock represented by said Certificate were duly assigned to John B. Pierson, Basil W. Kelsey and Homer J. Henning, voting trustees under the terms and conditions of one certain agreement dated December 7th, 1950."

All with the approval of plaintiff and upon which the trustees and defendant relied; that on December 12, 1950, stock certificate No. 3 for 450 shares was issued to the trustees, all with the approval of plaintiff, and since that date the trustees had exercised the rights and performed the duties entrusted to them by the terms of the agreement.

The answer further alleged that subsequent to the execution of the agreement the plaintiff ratified it by abiding by all its terms, attendance at a meeting of the board of directors, visitation of the premises in company with Henning, acceptance of dividends declared by the directors and paid by the corporation, acceptance of rents provided by the agreement, all to her personal advantage, and by reason thereof plaintiff was estopped from denying the validity of the agreements for alleged fraud or alleged illegality.

The prayer was that plaintiff take nothing and that the agreement be by the court ratified and confirmed.

To this answer the plaintiff demurred on the ground it did not assert any defense to the amended petition. This demurrer was overruled. Hence this appeal.

The specification of error is the trial court erred in overruling plaintiff's demurrer to defendant's answer.

Plaintiff states the demurrer raises four questions of law as follows:

"(1) Is the alleged voting trust and management agreement in such contravention of the corporation code as to render it void?

"(2) Is the alleged voting trust and the manner in which it was attempted to be carried out in contravention of the voting trust statute so as to render it void?

"(3) If the alleged voting trust is not in contravention of the voting trust statute, can this court pick out and segregate from the entire instrument that part or portion of the same which is valid and thus create a contract for the parties which is valid?

"(4) Assuming that the alleged contract is invalid, can it be made valid by an alleged estoppel?"

Plaintiff argues since in her answer the defendant admitted the execution of the alleged voting trust and management agreement and since it attempted to provide a method of operating a corporation, contrary to the method provided by statute, it must be abrogated.

Plaintiff points out certain provisions of our statutes, that is, G. S. 1949, 17-3301, which provides that the stockholders of a corporation shall each be entitled to one vote for each share of common stock held; second, 17-3102, which provides for an annual meeting of the board of directors at a time and place fixed by the bylaws and for notice in writing of any change; third, 17-3102, that the election of directors in stockholders' meetings shall be by ballot; fourth, 17-3101, that the corporation shall be managed by a board of directors; that a director shall be deemed qualified when he has filed a written acceptance and not before; also that a director shall hold office until his successor is elected and qualified.

Plaintiff argues that these are mandatory requirements of the statute; points out there were directors holding the various places when the contract was entered into; that none of them has ever filed his resignation; that the day the contract was entered into was not the day for an annual meeting of the stockholders and no notice was given of the meeting.

Plaintiff points out that the trustees are given the rights heretofore enumerated; that Pierson, Kelsey and Henning were never elected directors in any stockholders' meeting; that the bylaws provide for four directors and the contract provides for only three trustees.

Plaintiff argues that, outside of a consideration of the Corporation Code as stated above, any agreement that prohibited any stockholder from going upon the premises of the company without permission on its face was illegal and void; that any contract signed by anyone other than the board of directors which attempted to fix the salary of three trustees was illegal and void; that by the contract the president contracted to forego her salary; that it purported to lease the ground occupied by the company to it; agreed to a payment to Henning for making an audit; provided the company should make no loans during the lifetime of the agreement; provided there were certain amounts due the plaintiff; that no salary should be paid either the plaintiff or defendant; that no additional

stock should be issued or sold without mutual consent of the first and second parties; and there were to be no more annual stockholders' meetings for ten years, all of which could be by action of the board of directors.

Plaintiff points out, the trial court in its memorandum opinion overruling its demurrer to the answer suggested that the stockholders of a corporation might by an agreement waive the provisions of the Corporation Code and conduct the corporation in a different manner than that provided by the code unless the rights of creditors and the public were involved and infringed upon.

Counsel makes the flat statement that such a statement is completely erroneous. Counsel makes the statement that the rights of the public and every citizen of the state are infringed upon whenever a statute of the state is violated and it is against public policy to endeavor by contract to conduct a corporation in contravention of the express provisions of the code. Numerous authorities are cited by the counsel to sustain this position.

We cannot accord the provisions of the Corporation Code the weight contended for by plaintiff. A simple answer is found in 12 *Am. Jur.* 661, where the rule is stated as follows:

"§ 166. Waiver of Statutory Protection.—Closely related to the question of the legality of agreements in violation of statute is the question whether the protection of a statute may be waived by agreement. The answer to the latter question depends altogether upon the nature of the statute. An agreement is not necessarily against public policy because it waives a constitutional or statutory right or changes an established rule of law. Generally, parties may agree to waive statutory rights unless a question of public policy is involved. Whether the effect of any specific statute can be avoided by agreement depends upon whether the statute is one enacted for the protection of the public generally or whether it is designed solely for the protection of the rights of individuals, in which case it may be waived."

It will be noted the above rule recognizes there are instances where an agreement may provide for a waiver of statutory rights and still not violate public policy.

In *Leventhal v. Atlantic Finance Corp.*, 316 Mass. 194, 55 N. E. 2d 20, 154 A. L. R. 260, two men who owned all the stock of the corporation had made a contract as to dissolution of it different than provided for by the statute. An argument as to the legality of this contract somewhat the same as is made here by plaintiff was made. The court held the contract good and said:

"The filing of a petition by a corporation or by a stockholder under § 50 is a privilege afforded to the corporation and to the stockholder if the conditions

of the statute are complied with by the petitioner. A stockholder may or may not invoke this remedy. The contract expressly prohibited either stockholder from causing a dissolution of the corporation except as therein provided. Leventhal and Epstein owned all the beneficial interest in the corporation by virtue of their ownership of the stock, and there is nothing in the nature of the remedy afforded a stockholder by § 50 that he cannot waive or contract away. It comes within the general rule that one may waive the benefits of a statutory remedy provided he does not thereby contravene the public policy of the Commonwealth."

*Continental Corp. v. Gowdy,* 283 Mass. 204, 186 N. E. 244, 87 A. L. R. 1039, is a case where a corporation sold bonds which provided that its board of directors should not be liable thereon. The statute provided for such liability. The action was brought to hold the directors liable. The court held the contract good and said:

"2. The no recourse clause is not invalid as against public policy.

"Generally speaking public policy requires compliance with statutes regulating the management of corporations. But whether the effect of any specific statute can be avoided by contract depends upon the purpose for which the statute was enacted."

See, also, *Elliott et al., Aplnts., v. Lindquist et al.,* 356 Pa. 385, 52 A. 2d 180, 169 A. L. R. 1369; also *Way v. Pacific Lumber and Timber Co.,* 74 Wash. 332, 133 Pac. 595; also *Steen v. Modern Woodmen,* 296 Ill. 104, 129 N. E. 546, 17 A. L. R. 406. There the court held:

"A contract waiving constitutional or statutory rights or an established rule of law is not void on the ground that it is against public policy unless it is injurious in some way to the interests of society."

See, also, *Sovereign Camp, W. O. W., v. Smith,* 7 Fed. Supp. 569. In this action the plaintiff and defendant owned all the stock of the corporation. We have examined the various statutes plaintiff argues this contract violated. They are all statutes providing the manner in which the business of a corporation should be carried on. They are designed to regulate the internal affairs of corporations. We find no particular in which the interest of the public is jeopardized by this contract. There is no change in the liability of the corporation to third parties. The authorities cited are in point here. That parties to this contract when they entered into it waived the application of the statutes relied on by plaintiff. What has been said in dealing wih Question No. 1 is equally applicable to Question No. 2.

The judgment of the trial court is affirmed.