HAROLD A. LEVENTHAL vs. ATLANTIC FINANCE CORPORATION
& another. ·

Middlesex.   January 3, 4, 1944. — May 5, 1944.

Present: FIELD, C.J., QUA, DOLAN, & RONAN, JJ.

*Partnership,* What constitutes. *Corporation,* Stockholder, Issue of shares,
Dissolution. *Contract,* Construction, Between corporation and stock-
holder, Of employment, Parties, Against competition. *Waiver. Equity
Jurisdiction,* Interpretation of written instrument.

A tripartite contract between a corporation and two individuals who
severally owned and controlled all the beneficial interest in its stock,
containing provisions as to employment by the corporation of one of
the individuals as manager, as to loans by the individuals severally
to the corporation, as to one of the individuals not engaging in a cer-
tain business in which the corporation was engaged, as to circum-
stances and conditions under which the corporation might be dissolved,
and as to settlement of disputes by arbitration, did not constitute the
individuals partners nor was its effect merely to permit them to conduct
their business as such under a corporate form.

An agreement by a corporation in a tripartite contract between it and
two individuals who severally owned and controlled all the beneficial
interest in its stock, that each of the individuals "shall have free
access to and shall be entitled to examine all assets, including books,
papers and documents, of the corporation at reasonable times, and
shall be entitled to be represented at any stocktaking, for the purpose
of determining the value of his stock," did not limit the right of exami-
nation of one of the individuals to a single occasion when he was about
to exercise an option given him to sell his stock to the other individual.

Under a provision of a tripartite contract between a corporation and two
individuals who severally owned and controlled the beneficial interest
in all its stock, that the corporation would employ one of the indi-
viduals as its general manager for a certain term and that he would
accept such employment, the corporation and such individual at the
expiration of such term were free, without participation by the other
individual, to make another employment agreement such as would not
render either of them unable to perform fully the tripartite agreement.

In a suit in equity under G. L. (Ter. Ed.) c. 213, § 3, Tenth A, and Rule
101 of the Superior Court (1932) solely for an interpretation of a tri-
partite contract between a corporation and two individuals who sever-
ally owned and controlled the beneficial interest in all its stock, rights
of one of the individuals under the by-laws of the corporation, which
were not made a part of nor referred to in the contract, were not open
for determination.

Under a provision in a tripartite contract between a corporation and two individuals who severally owned and controlled the entire beneficial interest in its stock, giving each individual a right to have his shares "issued to others, in amounts of not less than one hundred shares," all of such shares to be regarded as his shares, neither of the individuals to dispose of his shares other than in the manner stated in the contract, each to "be bound by and responsible and accountable for all acts and omissions, including any failure to assign or deliver any of the shares, on the part of" the persons to whom they were issued, "as if the shares were issued to and held by" him, and certificates of stock to refer to the contract and to be subject to its provisions, the right of one of the individuals so to have his shares issued to others was not exhausted by a single exercise thereof.

A promise by one of two individuals in a tripartite contract between them and a corporation in which both were interested and which as one branch of its business dealt in making small loans, that he would not engage in a small loans business during the existence of the contract, continued in force during its existence, although in the meantime the corporation ceased its small loans business.

Provisions of a tripartite contract between a corporation and two individuals who severally and equally owned and controlled the entire beneficial interest in its stock, stating specific circumstances in which the corporation might be dissolved and expressly prohibiting either individual from causing a dissolution except as therein provided, were an effectual waiver by one of the individuals of his right to petition for a dissolution under G. L. (Ter. Ed.) c. 155, § 50, as amended.

BILL IN EQUITY, filed in the Superior Court on February 25, 1943.

The suit was heard by *Dowd*, J., by whose order a final decree was entered that "(1) the agreement . . . [described in the opinion], dated as of January 3, 1938, . . . did not create any partnership relationship between the plaintiff and the defendant Rubin Epstein.   (2) Under paragraph 1-C of said agreement, the plaintiff is not entitled to free access to, or to any examination of, any of the assets, books, papers, or documents of the defendant Atlantic Finance Corporation, except in the event of plaintiff making a written request for liquidation and dissolution of the defendant Atlantic Finance Corporation in accordance with the provisions of paragraph 1 of said agreement.   (3) As to paragraph 3 of said agreement, the plaintiff is not a necessary party to the contract of employment with the defendant Rubin Epstein, and the contract with said Epstein was made by the defendant Atlantic Finance Corporation alone

in its own individual capacity, and the corporation, not the plaintiff Leventhal, and the defendant Epstein, were liable upon it. (4) Paragraph 5 of said agreement, and the provisions thereof, are in full force and effect, and there was no breach of them by either of the defendants; and the matter of the small loan license was dropped by both the plaintiff and the defendant Rubin Epstein; and that the plaintiff's objection to the action of the defendant Rubin Epstein as regards said license is not made in good faith. (5) Under paragraphs 6 and 9-A of said agreement, the plaintiff has no right to transfer any of his shares of the stock of the defendant Atlantic Finance Corporation, except as provided in said agreement; and under the provisions of said paragraphs the plaintiff is estopped from transferring any of his said stock. (6) Under said agreement, the plaintiff has no right to file a petition for dissolution of the defendant Atlantic Finance Corporation under G. L. (Ter. Ed.) c. 155, § 50; and the plaintiff has waived any such right by executing said agreement, and is estopped from filing any such petition."

*A. L. Levine,* (*S. Mondlick* with him,) for the plaintiff.

*S. T. Lakson,* for the defendants.

RONAN, J. This is a bill in equity, brought in accordance with G. L. (Ter. Ed.) c. 213, § 3, Tenth A, and Rule 101 of the Superior Court (1932), for a decree interpreting a written contract made as of January 3, 1938, between the plaintiff, the defendant Epstein and the defendant Atlantic Finance Corporation, hereinafter called the corporation. The corporation since its organization in 1937 has done a large and profitable business in lending money. Epstein is the general manager of the corporation. Leventhal has for many years engaged in the business of making loans. None of his various contentions that this contract gave him certain rights was sustained in the Superior Court. He has appealed from the final decree.

The corporation agreed in the first paragraph of the contract to cause and permit its liquidation and dissolution after the end of any year beginning with 1942 upon the written request of either Leventhal or Epstein and upon

notice of the one making the request to the other unless the one to whom notice is given shall purchase the stock of the other at the times and at the prices determined as provided in the said paragraph.   Leventhal is also given the right to cause the liquidation and dissolution of the corporation as early as the end of 1940 unless Epstein shall purchase the stock and all notes of the corporation held by Leventhal and pay for them in the manner designated.   In the event of the decease of Leventhal or of Epstein, his personal representative shall have the right to have the corporation dissolved unless the survivor shall purchase the stock of the decedent.   The first paragraph contains a subdivision C relative to the examination of the assets, books and records of the corporation.   The corporation and Epstein agreed in the second paragraph that Leventhal may cause the dissolution of the corporation if its capital and surplus become so impaired that its assets do not exceed its liabilities.   The corporation in the third paragraph agreed to employ Epstein as general manager for five years at a stated salary but his employment was to cease upon the liquidation and dissolution of the corporation or the purchase by Leventhal of Epstein's stock, and in the fourth paragraph Epstein agreed to act as general manager, to take out a policy of insurance on his own life for the benefit of the corporation, and to lend to the corporation all dividends paid on his stock not exceeding a certain amount.   Leventhal by the provisions of the fifth paragraph agreed that he would not, while the contract was in force, engage in the small loan business except in the case of certain loans made with reference to motor trucks or equipment, and further agreed to lend the corporation $175,000.   Leventhal also agreed with the corporation to purchase two hundred fifty shares of preferred and five hundred shares of common stock for $25,500, and that these shares if issued to others should for all purposes of the contract be deemed to be Leventhal's shares.   If Leventhal failed to make said loan then Epstein might cause the liquidation and dissolution of the corporation.   The ninth paragraph contained restrictions upon the transfer of the stock which will be more fully mentioned hereafter.   The tenth

paragraph provided for the settlement of disputes by arbitration.

The first contention of Leventhal is that the contract created a partnership between Epstein and himself. He points out that the contract gives an option to Epstein and himself to liquidate and dissolve the corporation; that while he can transfer his stock, the stock is deemed his for the purposes of the contract; that loans made by him or Epstein to the corporation are to be subordinated to loans made by banks; and that the activities of Leventhal in the affairs of the corporation indicate that it was the intent of all the parties to the contract that Leventhal and Epstein were to be partners. Under this contract, Leventhal and Epstein were regarded as each holding one half of the outstanding capital stock. The corporation, however, executed the contract in its own behalf as a party in its own right and not as the principal or agent of either of these two stockholders but with them as separate and independent parties. It was the intention of all the parties that the corporation should continue to conduct its business as a corporation. The fact that all the capital stock of a corporation is owned by one or two persons who thereby secure the power to elect officers, to determine the policy to be followed or to put an end to the corporation, does not destroy the existence of the corporation. It still continues as a legal entity distinct from the stockholders. *England* v. *Dearborn*, 141 Mass. 590. *McAlevey* v. *Litch*, 234 Mass. 440, 441. *Star Brewing Co.* v. *Flynn*, 237 Mass. 213, 217. *Van Heusen* v. *Commissioner of Corporations & Taxation*, 257 Mass. 488, 489. *Berry* v. *Old South Engraving Co.* 283 Mass. 441, 451. *M. McDonough Corp.* v. *Connolly*, 313 Mass. 62, 66. The legal title to its property remains in the corporation while the beneficial interest is in the stockholders, and the right to recover damages for an impairment of the corporate assets belongs to the corporation and not to the stockholders. *Hirshberg* v. *Appel*, 266 Mass. 98. *Comerford* v. *Meier*, 302 Mass. 398. *Shaw* v. *Harding*, 306 Mass. 441. The ordinary relationship between stockholders is not that of partners. They have an interest in the corporation as evidenced by their shares, but

they are frequently strangers to each other and a stockholder does not stand in any fiduciary relation with the other stockholders or with the directors of the company, *Smith* v. *Hurd,* 12 Met. 371; *Mairs* v. *Madden,* 307 Mass. 378, and they are not entitled to bring proceedings available to members of a partnership on the ground that as stockholders they are partners as to each other. *Pratt* v. *Bacon,* 10 Pick. 123, 126, 127. *Russell* v. *M'Lellan,* 14 Pick. 63, 68. ·*Godfrey* v. *Mutual Finance Corp.* 242 Mass. 197, 200. *Cook* v. *Cook,* 270 Mass. 534, 544. The contract in the present case did not transfer any of the property of the corporation to Leventhal or Epstein, and the corporation, of course, could not become a partner with either or both of them. *Whittenton Mills* v. *Upton,* 10 Gray, 582. *Williams* v. *Johnson,* 208 Mass. 544. *Rosenblum* v. *Springfield Produce Brokerage Co.* 243 Mass. 111.

Nor was the effect of the contract to enable Leventhal and Epstein to conduct their business as partners under a corporate form. The testimony and the findings of the judge negative any contention that the corporation was a mere matter of form. It was actively engaged in conducting a large and successful business under the immediate supervision of Epstein, who in accordance with the contract of January 3, 1938, was employed as general manager. The participation of Leventhal in the affairs of the corporation by giving instructions to some of the employees, approving loans and examining the books and records and by other similar conduct was not inconsistent with the fact that he held one half of the stock. For instance, with reference to the furnishing of monthly statements to Leventhal, the judge found that these statements were furnished at the request of Leventhal for the purpose of safeguarding his investment, that they were given to him as a gesture of courtesy to a large stockholder, and that the board of directors was acting within its rights in rescinding a vote giving Leventhal the power to approve loans over a certain amount made by the corporation. The rights given by this contract to Leventhal and Epstein with reference to the dissolution of the corporation and the transfer of their stock are rights

that it would be natural for two stockholders owning all the stock to acquire in order to protect their interests in the corporation, although the rights acquired by them may be somewhat more extensive than those that have been frequently provided for the protection of the corporation and its stockholders. *New England Trust Co.* v. *Abbott,* 162 Mass. 148. *Jones* v. *Brown,* 171 Mass. 318. *Longyear* v. *Hardman,* 219 Mass. 405. *Albert E. Touchet, Inc.* v. *Touchet,* 264 Mass. 499. *Brown* v. *Little, Brown & Co. (Inc.)* 269 Mass. 102. *68 Beacon Street, Inc.* v. *Sohier,* 289 Mass. 354. *Krauss* v. *Kuechler,* 300 Mass. 346. *New England Trust Co.* v. *Spaulding,* 310 Mass. 424. *Legro* v. *Kelley,* 311 Mass. 674. And the subordination of their personal loans to the corporation to those made to it by the banks was for the benefit of the corporation in order to increase its ability to secure financial aid from banking institutions, a privilege that was undoubtedly necessary for the successful operation of a money lending corporation. See *Albert Richards Co. Inc.* v. *Mayfair, Inc.* 287 Mass. 280. There is nothing in the arbitration clause that indicates that it is limited to disputes arising between Leventhal and Epstein. It applies to all controversies arising out of the various provisions of the contract where the corporation alone or with either Leventhal or Epstein is the promisor as well as to the provisions where either Leventhal or Epstein is the promisor to the other.

There is nothing in the contract of January 3, 1938, giving either Leventhal or Epstein power to act in any manner that will bind the other or showing that one is the agent of the other. Under that contract each acts for himself and in his own behalf. Each held his stock in his own right. Whatever profits they received came to them as stockholders of the corporation. These profits did not come to them directly from the business as they would if they were conducting the business as coöwners. These profits might be more or less depending upon the success of the corporation, but they did not by the contract assume any personal obligation to pay any losses that might be incurred by the corporation, or to pay any creditors of the latter while both

remained stockholders, or to forego the limited liability of stockholders. The judge found that, until disputes arose between Leventhal and Epstein, Leventhal at all times insisted upon his rights as a stockholder and not as a partner. The contract did not create a partnership, and the judge was right in ruling that it did not create such a relationship between Leventhal and Epstein. *Sikes* v. *Work,* 6 Gray, 433. *Magee* v. *Magee,* 233 Mass. 341, 345. *Mitchell* v. *Gruener,* 251 Mass. 113. *Seemann* v. *Eneix,* 272 Mass. 189, 194.

The case is plainly distinguishable from *Silversmith* v. *Sydeman,* 305 Mass. 65, where a corporation sold most of its property to another corporation and one stockholder agreed to wind up the old corporation for the benefit of himself and the remaining stockholder. This is not an instance where a court of equity may look beyond the corporate entity to the responsible wrongdoers in order to protect the public, prevent fraud, compensate an injury or accomplish substantial justice. *Hallett* v. *Moore,* 282 Mass. 380, 399. *New England Theatres, Inc.* v. *Olympia Theatres, Inc.* 287 Mass. 485, 493. *Hanson* v. *Bradley,* 298 Mass. 371, 379–380. *Browne* v. *Brockton National Bank,* 305 Mass. 521, 529.

The contract provided in paragraph 1 (C) that both Leventhal and Epstein or "the legal representative of his estate, shall have free access to and shall be entitled to examine all assets, including books, papers and documents, of the corporation at reasonable times, and shall be entitled to be represented at any stocktaking, for the purpose of determining the value of his stock." We are not concerned with any common law or statutory right of the plaintiff as a stockholder to examine the books and records of the corporation. See *Varney* v. *Baker,* 194 Mass. 239; *Powelson* v. *Tennessee Eastern Electric Co.* 220 Mass. 380; *Klotz* v. *Pan-American Match Co.* 221 Mass. 38; *Shea* v. *Parker,* 234 Mass. 592; *Dennison* v. *Needle,* 274 Mass. 416; *Mairs* v. *Madden,* 307 Mass. 378. The question is as to what rights in this respect the plaintiff acquired under the contract. This provision appears in the first and only paragraph in

which the corporation makes a promise to both stockholders. The language of the provision is broad and general. "Free access" to the books and records is afforded to the stockholder "at reasonable times." The right to an examination is neither expressly nor by implication limited to the single occasion where the stockholder who is about to sell to the other stockholder desires to inspect the assets and records to enable him to ascertain the value of his stock. If Epstein, having the right to purchase Leventhal's stock, upon the happening of any of the events by which in accordance with the contract that right was to accrue to him, failed to purchase the stock, then dissolution of the corporation was to follow. It is plain that only one occasion could arise for Leventhal to determine the value of his shares for the purpose of selling them to Epstein. That the application of the provision now in question was not intended to be confined to that occasion is negatived by the phrase that gives the stockholder the right to inspection and examination "at reasonable times." It cannot be assumed that the parties intended that these words should be considered as surplusage and unnecessary for the full and complete expression of their intent in executing the contract, *Rocci* v. *Massachusetts Accident Co.* 222 Mass. 336; *Koshland* v. *Columbia Ins. Co.* 237 Mass. 467; *Bray* v. *Hickman*, 263 Mass. 409; *Rose-Derry Corp.* v. *Proctor & Schwartz, Inc.* 288 Mass. 332, and the permission to have a representative present "at any stocktaking, for the purpose of determining the value of his stock," does not qualify the previous portion of this subparagraph or modify or limit the inspection or examination of the assets and records to an occasion where the only object is to fix the value of the stock. The right to have a representative present is in addition to and not in limitation of the power of inspection and examination already granted. This interpretation is not only consistent and harmonious with the other portions of the paragraph in which it appears but is required by a reading of the entire contract, some of the provisions of which would not be operative if the right of inspection and examination were restricted to the occasion of a sale of the shares by Leventhal

to Epstein as the defendants contend. *Pittsfield & North Adams Railroad* v. *Boston & Albany Railroad,* 260 Mass. 390. *Standard Sanitary Manuf. Co.* v. *Hartfield Realty Co.* 284 Mass. 540. *Radio Corp. of America* v. *Raytheon Manuf. Co.* 300 Mass. 113. *Waldo Bros. Co.* v. *Platt Contracting Co. Inc.* 305 Mass. 349.

Under the contract, the corporation agreed with Epstein to employ him as general manager for the term of five years at a certain salary. This agreement for employment was to terminate if prior to the date of its expiration the corporation was dissolved or Leventhal purchased Epstein's stock. Epstein agreed in this contract of January 3, 1938, to accept employment upon the conditions stated. The agreement for employment ran its full term and the board of directors has made a new agreement with him. The contract of January 3, 1938, did not make Leventhal a party to the original agreement of employment or to the present one. *Lovell* v. *Commonwealth Thread Co. Inc.* 272 Mass. 138. *Electro-Formation, Inc.* v. *Ergon Research Laboratories, Inc.* 284 Mass. 392, 394. The corporation and Epstein were free to make an agreement for his employment as general manager so long as the agreement would not render either of them unable to perform fully the contract of January 3, 1938, between them and Leventhal. The latter has argued that under the by-laws of the corporation he has a right as a shareholder to participate in making a contract of employment with Epstein as general manager. We do not pass upon this alleged right of Leventhal for the scope of this proceeding is to interpret the written contract of January 3, 1938, and not the by-laws of the corporation. Under that contract, whatever his rights may be under the by-laws, he is not a party to any such agreement with Epstein.[1]

The contract gave Leventhal the right to have his shares "issued to others, in amounts of not less than one hundred shares," but for the purposes of the contract all of his half of the outstanding shares in whatever name they stood were to be regarded as his shares. The other outstanding shares

---

[1] The contract neither included nor referred to the by-laws. — REPORTER.

were deemed to be Epstein's shares. The certificates of stock were to refer to the contract and to be made subject to its provisions. The right of Leventhal to have his stock issued to others is not in terms restricted to the original issue, and the issuance of new certificates to others would not violate the provision of the contract that forbids either Leventhal or Epstein from voluntarily disposing of his stock other than in the manner mentioned in the contract, for it is plain from other provisions of the contract that the stock owned by both may be held in the names of others and that Leventhal and Epstein "shall be bound by and responsible and accountable for all acts and omissions, including any failure to assign or deliver any of the shares, on the part of such others or any of them, as if the shares were issued to and held by" Leventhal or Epstein, as the case may be. The power of Leventhal to name those to whom his stock was to be issued was not exhausted by a single exercise of the power and he has the right to have his stock transferred to others from time to time in lots of not less than one hundred shares, the certificates referring to and being made subject to the contract. See *Bowditch* v. *Banuelos*, 1 Gray, 220; *Reed* v. *Jones*, 133 Mass. 116; *State Street Trust Co.* v. *Crocker*, 306 Mass. 257.

At the date of the contract the making of small loans, so called, G. L. (Ter. Ed.) c. 140, § 96, see now St. 1941, c. 158, constituted a branch of the corporation's business. Its license to engage in the small loan business was revoked in October, 1939. *Bernhardt* v. *Atlantic Finance Corp.* 311 Mass. 183. After the law was amended, in 1941, the licensing authority informed the corporation that a license would be issued if it filed an application. Both Leventhal and Epstein agreed to drop the matter of a license. The corporation has not since engaged in the small loan business. Under the contract Leventhal agreed that he would not during the existence of the contract engage in the small loan business except in a particular not now material. There is nothing in the contract qualifying the absolute promise of Leventhal not to engage in this business, and there is no condition implied that Leventhal's promise was to be effec-

tual only so long as the corporation conducted a small loan business.  This is not the case of one who sells his business and agrees with the buyer not to compete with him.  Here two stockholders agree for an indefinite time to remain the only stockholders of a successfully operated corporation and to withdraw or wind up the business under certain conditions.  The contract must be considered as a whole, and the fifth paragraph continues in force and effect even though the corporation is not at present engaged in the small loan business.  See *Marshall Engine Co.* v. *New Marshall Engine Co.* 203 Mass. 410; *Myott* v. *Greer,* 204 Mass. 389.

The effect of the contract upon the right of Leventhal to bring proceedings under G. L. (Ter. Ed.) c. 155, § 50, as amended, for a dissolution of the corporation is the final question presented for decision.  This statute provides that a corporation that desires to close its affairs may, "unless otherwise provided in the agreement of association," by vote of a majority of its members file a petition for its dissolution, and a person holding not less than forty per cent of its outstanding shares may file such petition if the votes of the directors and stockholders are equally divided on a question affecting the general management of its affairs or if votes of the stockholders are equally divided in the election of directors and no way appears to break the deadlock.  The dissolution of a corporation which is a creature of the Legislature is primarily a legislative function, and the only authority courts have to deal with this subject is the power conferred upon them by the Legislature.  *Olds* v. *City Trust, Safe Deposit & Surety Co.* 185 Mass. 500.  *Cook* v. *Cook,* 270 Mass. 534.  *Hurley* v. *Boston Railroad Holding Co.* 315 Mass. 591, 614–615.  It is not suggested that the agreement of association of the defendant corporation contains any provision relating to its dissolution.  The fact that the incorporators or stockholders might make a provision for the dissolution of the corporation indicates a recognition by the Legislature that the corporation and its stockholders might agree in the agreement of association upon a method for dissolution other than that given by this statute.  Soon after the enactment of the original statute, St. 1852, c. 55,

now appearing as G. L. (Ter. Ed.) c. 155, § 50, as amended, it was said that the statute was not restrictive in its terms but permissive, and that it did not take away the common law rights of a corporation to sell its property and terminate its business preparatory to a surrender of its charter. *Treadwell* v. *Salisbury Manuf. Co.* 7 Gray, 393, 406. But the corporate existence cannot be terminated except by some act of the sovereign power by which it was created. It can be ended by some act of the Legislature, by the judgment of a court or by proceedings for the surrender of its charter or for its dissolution. *Attorney General* v. *Adonai Shomo Corp.* 167 Mass. 424. *Essex Co.* v. *Commonwealth,* 246 Mass. 242. *Syrian Antiochean St. George Orthodox Church* v. *Ghize,* 258 Mass. 74.

The filing of a petition by a corporation or by a stockholder under § 50 is a privilege afforded to the corporation and to the stockholder if the conditions of the statute are complied with by the petitioner. A stockholder may or may not invoke this remedy. The contract expressly prohibited either stockholder from causing a dissolution of the corporation except as therein provided. Leventhal and Epstein owned all the beneficial interest in the corporation by virtue of their ownership of the stock, and there is nothing in the nature of the remedy afforded a stockholder by § 50 that he cannot waive or contract away. It comes within the general rule that one may waive the benefits of a statutory remedy provided he does not thereby contravene the public policy of the Commonwealth. There was no error in the ruling that the plaintiff has waived any right to file a petition for dissolution. *Middlesex Co.* v. *Osgood,* 4 Gray, 447. *Brown* v. *Eastern Slate Co.* 134 Mass. 590. *Livingstone* v. *Murphy,* 187 Mass. 315. *Herschman* v. *Justices of the Municipal Court,* 220 Mass. 137. *Federal National Bank* v. *Koppel,* 253 Mass. 157. *Castaline* v. *Swardlick,* 264 Mass. 481. *McLearn* v. *Hill,* 276 Mass. 519. *Stoneham Five Cents Savings Bank* v. *Johnson,* 295 Mass. 390. *Casavant* v. *Boreka,* 298 Mass. 528. *Mulligan* v. *Hilton,* 305 Mass. 5.

It follows that the second paragraph of the final decree is to be struck out and a new paragraph is to be substituted

to the effect that the plaintiff is entitled to inspect and examine all the assets, books, papers and documents of the corporation at reasonable times; that the third paragraph should be extended to include not only the original contract of employment of Epstein but any other contract of employment that the corporation should make with him; and that the fifth paragraph is to be struck out and a new paragraph is to be inserted to the effect that the plaintiff has the right to new certificates of his shares issued in lots of not less than one hundred shares to his nominees provided such certificates contain a notation that they are issued in accordance with the contract of January 3, 1938, and are subject to its provisions. As so modified the final decree is affirmed.

*Ordered accordingly.*