695 P.2d 361

Joseph B. LEE, Jr., Plaintiff-appellant,

v.

SUN VALLEY COMPANY, a corporation, Defendant-respondent.

No. 15308.

Supreme Court of Idaho.

Dec. 24, 1984.

Rehearing Denied Jan. 14, 1985.

James B. Donart, Ketchum, Idaho, for plaintiff-appellant.

Robert M. Tyler, Jr., of Elam, Burke & Boyd, Boise, Idaho, for defendant-respondent.

BAKES, Justice.

This case involves the legal effect of an exculpatory contract releasing the Sun Valley Co., a licensed outfitter and guide, from any liability arising out of an injury to one of its guests.[1]

In October, 1981, plaintiff was attending a National Transportation Educational Fraternity convention in Sun Valley, Idaho. A horseback trail ride was one of the activities provided by the Sun Valley Company for the fraternity members, and a group of ten, including the plaintiff, elected to participate in the trail ride. Each member signed a form entitled "Rental Agreement—Saddle Animals For Hire" which stated:

> "Upon my acceptance of horse and equipment, I acknowledge that I assume full responsibility for my safety. I further understand that I ride at my own risk, and I agree to hold the above entity, its officers, employees, etc., harmless from every and all claim which may arise from injury, which might occur from use of said horse and/or equipment, in favor of myself, my heirs, representatives or dependents. I understand that the stable does not represent or warrant the quality or character of the horse furnished."

Before the plaintiff mounted his assigned horse, the guide for defendant Sun Valley Company readjusted the cinch on the horse's saddle. Approximately halfway through the trail ride, as the trail turned and headed back down the mountain, the plaintiff's saddle loosened and began to slide forward on the horse. The plaintiff was riding the last horse in the group, and his calls for help were not heard by the trail guide who rode the first horse in the group. Plaintiff stopped the horse and, while attempting to dismount, the saddle rotated on the horse. The horse reared and threw the plaintiff to the ground causing injuries to his back.

The plaintiff sued for damages including medical expenses, pain and suffering, inca-

1. The defendant and its employees at the time of the accident were licensed by the self-governing agency of the Idaho Outfitters & Guides Board.

pacity, and mental anguish. The district court granted summary judgment to the defendant on the basis that the release form signed by the plaintiff absolved the defendant from any liability arising out of the accident.

■ We have previously held that parties to a transaction may agree by contract to limit liability for negligence or contractually waive rights and remedies, subject to certain exceptions. *See Steiner Corp. v. American District Telegraph*, 106 Idaho 787, 683 P.2d 435 (1984); *Anderson & Nafziger v. G. T. Newcomb, Inc.*, 100 Idaho 175, 595 P.2d 709 (1979); *Rawlings v. Layne & Bowler Pump Co.*, 93 Idaho 496, 465 P.2d 107 (1970). The validity of the exculpatory contract in the present case is not attacked on the basis of defects in formation since plaintiff admits that he read and signed the contract, and he alleges no failure of consideration. Plaintiff does argue that the language of the contract is ambiguous and should be construed against Sun Valley; however, we find no merit in this argument. The agreement clearly and simply states that Sun Valley should be held "harmless for every and all claim which may arise from injury, which might occur from use of said horse and/or equipment," which is both unambiguous and applicable to the facts alleged by plaintiff. Therefore, it appears that unless the exculpatory contract falls within some exception to the general rule set out in the *Steiner, Anderson & Nafziger*, and *Rawlings* cases, *supra*, the agreement signed by the plaintiff absolves Sun Valley of any liability.

The general rule that "express agreements exempting one of the parties for negligence are to be sustained" is subject to exceptions where: "(1) one party is at an obvious disadvantage in bargaining power; (2) a public duty is involved (public utility companies, common carriers)." *Rawlings v. Layne & Bowler Pump Co.*, 93 Idaho at 499–500, 465 P.2d at 110–111. Plaintiff concedes that he had no disadvantage in bargaining power, but argues that the second exception applies on the theory that

the statutes regulating outfitters and guides impose a public duty upon Sun Valley. Utilities and carriers were named in the *Rawlings* case as obvious examples of parties owing a public duty, but there may be others who also owe a public duty in Idaho. The idea of a public duty is closely related to the idea of public policy and it is within the domain of the legislature, elected by the public, to determine such duties and policies.

■ Chapter 21 of Title 36, Idaho Code, sets out a licensing scheme for outfitters and guides which does not impose any duties upon Sun Valley other than the payment of fees and general business worthiness. The mere fact that Sun Valley is licensed by the state does not impose a public duty limiting Sun Valley from entering an agreement to exempt its liability for negligence. However, subsequent to the licensing statute, the legislature enacted Chapter 12, Title 6, Idaho Code, with the following policy and purpose:

"**6–1201. Legislative purpose.**—Every year, in rapidly increasing numbers, the inhabitants of the state of Idaho and nonresidents are enjoying the recreational value of Idaho's mountains, rivers, and streams, many of which are remote and far removed for ordinary auto travel. The tourist trade is of vital importance to the state of Idaho, and the services offered by licensed outfitters and guides significantly contribute to the economy of the state of Idaho. The legislature recognizes that there are inherent risks in the recreational activities provided by outfitters which should be understood by each participant. These risks are essentially impossible to eliminate by outfitters and guides. *It is the purpose of this chapter to define those areas of responsibility and affirmative acts for which outfitters and guides shall be liable for loss, damage, or injury, and to define those risks which the participant expressly assumes and for which there can be no recovery.*" (Emphasis added.)

In the same chapter, I.C. § 6–1206 provides:

"No licensed outfitter or guide acting in the course of his employment shall be liable to a participant for damages or injuries to such participant unless such damage or injury was directly or proximately caused by failure of the outfitter or guide to comply with [1] the duties placed on him by chapter 21, title 36, Idaho Code, or [2] by the rules and regulations of the Idaho outfitters and guides board, or [3] by the duties placed on such outfitter or guide by the provisions of this chapter."

The record in the present case contains no allegations or credible argument that Sun Valley violated any duties contained in Chapter 21, Title 36, Idaho Code, or the rules and regulations. The only possible violation of Chapter 12, Title 6, Idaho Code, is contained in I.C. § 6–1204 which requires Sun Valley's guide[s] to "conform to the standard of care expected of members of his profession."

The issue then becomes whether this duty imposed by I.C. § 6–1204 is also exempted by the contract. There are some statutory rights and duties which may be waived or exempted by contract. *E.g.*, *Leventhal v. Atlantic Finance Corp.*, 316 Mass. 194, 55 N.E.2d 20 (1944) (stockholders' right to seek dissolution may be waived); *Newey v. Newey*, 161 Colo. 395, 421 P.2d 464 (1966) (antenuptial agreement is binding as waiver of property, alimony and support rights); *Perry v. Perry*, 551 P.2d 256 (Okla.1976) (property, alimony and support statutory rights may be waived by contract); *Matter of Burgess' Estate*, 646 P.2d 623 (Okla.App.1982) (statutory inheritance rights may be waived by contract); *Dunbabin v. Brandenfels*, 18 Wash.App. 9, 566 P.2d 941 (1977) (rights of usury defense may be waived by contract).

Other statutory rights and duties may not be waived or exempted by contract. *Sherba Bros., Inc. v. Campbell*, 361 So.2d 814 (Fla.App.1978) (minimum wage); *Iowa Mutual Ins. Co. v. Parr*, 189 Kan. 475, 370 P.2d 400 (1962) (property exemptions from attachment and execution); *Egy v. U.S. Fidelity & Guaranty Co.*, 8 Kan.App.2d 144, 651 P.2d 954 (1982), *aff'd*, 233 Kan. 234, 661 P.2d 1239 (1983) (property exemption for workmen's compensation benefits); *Fireman's Fund Ins. Co. v. Sand Lake Lounge, Inc.*, 514 P.2d 223 (Alaska 1973) (statute of limitations); *Southwestern Bell Tel. Co. v. Employment Sec. Bd. of Review*, 210 Kan. 403, 502 P.2d 645 (1972) (unemployment compensation); *Elson Development Co. v. Arizona Savings & Loan Ass'n*, 99 Ariz. 217, 407 P.2d 930 (1965) (statutory right of redemption).[2] In the case of workmen's compensation, I.C. § 72–318 invalidates any agreement between an employer and employee exempting the employer from its duties under the workmen's compensation statute. "Even though no express provisions be contained in the [worker's compensation] statute, it would seem that any attempt to nullify or limit the operation of law must be held to be invalid as being against public policy." 81 Am.Jur.2d Workmen's Compensation § 51, p. 741 (1976).

We do not attempt to articulate a general rule applicable to all statutes. However, we do hold that where the legislature has addressed the rights and duties pertaining to personal injuries arising out of the relationship between two groups, *i.e.*, employers/employees, outfitters and guides/participants, and has granted limited liability to one group in exchange for adherence to specific duties, then such duties become a "public duty" within the exception to the general rule validating exculpatory contracts. Therefore, while the agreement between Sun Valley and plaintiff does absolve Sun Valley from common law liabilities, it does not absolve Sun Valley from liability for possible violation of the public duty imposed by I.C. § 6–1204.

Having concluded that the agreement between the parties does not absolve Sun Valley of a possible violation of I.C.

---

**2.** The citations above are merely examples of other jurisdictions' treatment of specific contractual waivers of statutory rights. They are not necessarily precedent for the same disposition in Idaho.

§ 6–1204, we must determine whether or not the factual record presented by the plaintiff establishes a triable issue of fact on the issue of whether or not the defendant Sun Valley violated "the duties placed upon such outfitter or guide by the provisions of [I.C. § 6–1204]." I.C. § 6–1206. Since the record reflects that the parties were not aware of the applicability of the foregoing sections of the code,[3] the evidence did not focus on the "standard of care" expected of members of the outfitters and guides profession. The defendant's motion for summary judgment was supported by depositions of the employee guides which disclosed that the horse in question had returned from a previous trail ride and that the guide retightened the saddle prior to plaintiff's mounting the horse. Plaintiff made no showing that the "standard of the profession" required more. The plaintiff filed no affidavits, and the plaintiff's own deposition contained no allegation or testimony in opposition that the guide failed to perform his or her professional duties. Rather, the deposition of the plaintiff actually supports the defendant's motion in that the plaintiff testified that the guide adjusted and tightened the cinch on the saddle prior to the trail ride. The mere fact that the saddle loosened or rotated on the horse does not establish that the "standard of the profession" required more than was done. Therefore, the plaintiff did not establish a factual claim that the defendant failed to satisfy the "standard of care expected of members of his profession," and therefore the trial court did not err in granting summary judgment to the defendant.

Affirmed.

DONALDSON, C.J., and SHEPARD, J., concur.

HUNTLEY, Justice, dissenting.

When this case was decided on summary judgment in the district court, the judge and parties were not aware of Chapter 12, Title 6, Idaho Code.[1] This statute is particularly applicable to the facts of this case, but was not addressed or argued by the parties on motion for summary judgment. In this unique situation I would vacate the summary judgment and remand to the district court to reconsider the motion for summary judgment in light of Chapter 12, Title 6, Idaho. The issue on remand would be whether any material facts are in issue as to whether Sun Valley's guide[s] violated the duty "to conform to the standard of care expected of members of his profession."

BISTLINE, J., concurs.

BISTLINE, Justice, dissenting.

Having joined the dissent of Huntley, J., I would add how remarkable it is that the majority can state that there is no issue of fact needing to be resolved, even though the provisions of Chapter 12, Title 6, Idaho Code (which the majority correctly notes are not absolved by Sun Valley's exculpatory clause, which provisions impose standards of care upon Sun Valley toward users of its services such as the Plaintiff) were never addressed, argued, or briefed before the district court. It is not a district court finding that there are no material fact issues—even in light of Chapter 12, Title 6, Idaho Code—but rather this Court making such a bald declaration, a declaration which is a brazen usurpation of the district court's duties and an unwarranted and unwise sortie by this Court into the realm of issues outside its proper function as an appellate court.

The majority further err in the conclusion that Sun Valley's exculpatory clause absolves it from common law liabilities.

---

3. At oral argument defendant's counsel claimed that this chapter was not indexed in the Idaho Code. We have verified that claim and note that the chapter was not included in the index until the latest index volume, received by this Court in July, 1984.

1. Defendant's counsel claimed at oral argument that this chapter was not indexed in the Idaho Code. We have verified that claim and note that the chapter was not included in the index until the latest index volume, received by this Court in July, 1984.

Our own precedential case law teaches otherwise and is directly applicable in the interpretation of exculpatory clauses such as the one employed by Sun Valley.

Although the majority cites *Anderson & Nafzinger v. G.T. Newcomb, Inc.,* 100 Idaho 175, 178, 595 P.2d 709, 712 (1979) and other Idaho cases for the proposition that parties to a transaction can contractually agree to limit liability for negligence or waive rights and remedies normally available if certain requirements concerning the exculpatory agreement are satisfied, it avoids mention of the pertinent sentence in *Anderson & Nafziger* which should be this day guiding the Court: "it is nevertheless well established that *courts look with disfavor on such attempts to avoid liability and construe such provisions strictly against the person relying on them, especially when that person is the preparer of the document.*" *Id.* (Emphasis added). In this case, Defendant is relying upon an exculpatory clause which it prepared, thus the clause necessarily has to be strictly construed *against* Defendant.

With this in mind it requires a creativity of mind beyond mine to understand how this clause exculpates Defendant from all common law liabilities. Simply put, it does not, but purports to exculpate Defendant only from those acts for which it declares that Defendant shall not be held liable—which is that Sun Valley shall not be held liable for injuries caused by its horse or by its equipment. Such is the written word. Mr. Lee, however, alleges that a Sun Valley employee was negligent in cinching the saddle to the horse, and that it was this negligence that caused his injuries. Mr. Lee does not allege that the horse caused him harm, or that the equipment caused him harm. Rather, he states that it was the employee's negligence that caused his harm in not properly tightening the saddle's cinch, having just recently loosened it. This allegation of negligence is not covered by Defendant's exculpatory clause, and presents a genuine issue of fact of whether the Sun Valley employee was negligent. Thus, the granting of summary judgment cannot be sustained, and should be reversed, and the cause remanded for further proceedings.

Particularly difficult to accept is the majority's use of the following generality as a predicate upon which to base a decision which some will see as result-oriented instead of reason-oriented; the majority states: "There are some statutory rights and duties which may be waived or exempted from contract." This is backed up by citations from other jurisdictions, each one of which appear to have nothing to do with *tort liability* for violation of obligations of due care for the safety and welfare of others. Thus, these cases are totally inapplicable here, wherein it is tort liability against which Defendant has sought to contractually immunize itself.

The legislature has imposed certain duties and obligations upon the operators of motor vehicles, such as to drive with regard for appropriate road and weather conditions, and to avoid striking other vehicles and pedestrians. Under the rationale of the majority, such statutory duties may be contractually exempted. The legislature has criminalized the selling of alcoholic beverages to minors. Under that same rationale the proprietor of a tavern would be well-advised to emulate Defendant's successful use of a patron's rental agreement to let out its stools, chairs, and tables with similar hold harmless language. While there are for certain better analogies which might illustrate the point, time constraints under the Court's rules of production preclude further discussion.

It is, or should be, sufficient to say, however, that when common law duties of due care are given specific attention by the people through their legislature, such statutory obligations should be judicially held at least less susceptible than under the common law, as a matter of public policy, to judicial nullification by application of waiver and contractual exemptions. Certainly when the document signed by the Plaintiff is measured by the guidelines set forth in *Anderson & Nafziger* and those guidelines are applied as they were applied

in *Anderson & Nafziger*, the document cannot by any stretch of logic, be said to speak clearly and directly to the conduct of the Defendant which caused the injury complained of by the Plaintiff.

Even if the instrument signed by the Plaintiff Lee could be conceded for the sake of argument to meet the stringent standards of interpretation and application that are mandated by law, the instrument could not defeat Plaintiff's cause of action. In the case before the Court the Defendant was engaged in an activity in which there is a public interest and any contract seeking to excuse the Defendant from its duty from safe guarding the safety and freedom from injury of the Plaintiff is contrary to public policy and therefore unenforceable. This rule of law is recognized in all jurisdictions. The rule is stated in 17 *Corpus Juris* Secundum, Subject: Contracts, § 262 at page 1160 in the following language:

A contract for exemption from liability for negligence is generally void and unenforceable if it is violative of law or contrary to some rule of public policy, as where a legal or public duty is involved; (Underscoring supplied)

*Corpus Juris Secundum* again states the rule under the subject of Negligence in 65–A C.J.S. § 174(7) at page 303 in the following language:

Depending on the public policy as declared in a statute or ordinance, the doctrine of assumption of risk, or the maxim, Volenti non fit injuria, may not constitute a defense where the violation of the statute or ordinance is involved, and the benefit of such legislation may not be waived by plaintiff, at least where it was enacted for the public good. (Underscoring supplied).

Substantially the same rule is stated in 17 *American Jurisprudence* 2d under the subject: Contracts, at § 188, page 557, in the following language:

However the law does not look with favor on provisions which relieve one from liability for his own fault or wrong. It is a well-settled general doctrine that the law will not sustain a covenant of immunity which protects against fraud or relieves one of a duty imposed by law for the public benefit. (Underscoring supplied).

The Defendant in the case before the Court is engaged in an activity that is regulated by the law of the State of Idaho in the exercise of the State's Police power. The Defendant, Sun Valley Company, is a licensed Outfitter and its employee who conducted the trail ride in question, Kari Kreinheder, was a licensed guide (see deposition of Kreinheder, lines 14 and 15) as was the other employee, Carey Jill Chandler (deposition of Chandler page 24, lines 5 and 6) who was employed and aided in the removal of the Plaintiff on the day in question. In the public interest, the State of Idaho has seen fit to regulate and license Outfitters and Guides (see Title 36, Chapter 21, Idaho Code, 2101 through 2118). That legislation provides in depth for the regulation of activities of Outfitters and Guides. It spells out the guidelines by which Outfitters and Guides are governed, provides for the creation of an Idaho Outfitters and Guides Board, the appointment and qualification of its members and grants to that Board the right to prescribe regulations further governing the activities of Outfitters and Guides including the right to make and enforce rules and regulations necessary for the purpose of safeguarding the safety and freedom from injury of persons utilizing the services of Outfitters and Guides. Clearly its opening Section 36–2101, containing its declaration of policy, contains a statement of public policy of the State of Idaho with respect to Outfitters and Guides and their activities. Section 36–2101, the initial section of the law, entitled Declaration of Policy, provides in pertinent part as follows:

The intent of this legislation is to promote and encourage residents and non-residents alike to participate in the enjoyment and use of the mountains, rivers and streams of Idaho, and the fish and game therein, and to that end to regulate and license those persons who undertake for compensation to provide equipment

or personal services to such persons, <u>for the explicit purpose of safeguarding the health, safety</u>, welfare and <u>freedom from injury or danger of such persons</u>, in the exercise of the police power of this state. (Underscoring supplied).

It is at once apparent from reading the Declaration of Policy that it is clearly intended by the enactment of the legislation to safeguard the freedom from injury or danger of any person participating in the regulated and licensed activities embraced by the legislation. Section 36–2101 defines generally the scope of the legislation and is sufficiently all-inclusive to include trail rides of the type here in question. The activity is more specifically defined in the regulations adopted by the State of Idaho Outfitters and Guide's Board, at page 1 thereof, which provides as follows:

1. The Idaho Outfitters and Guide's Act applies to all those who provide facilities, equipment or services for the conduct of hunting, fishing boating, or hazardous mountain excursions for compensation, whether the compensation is in the form of cash, goods, or services. Hazardous mountain excursions <u>includes trailrides</u>, backpacking, technical mountaineering/rock climbing, cross country skiing, back country alpine skiing, and snowmobiling. (Underscoring supplied).

To permit the enforcement of the document signed by the Plaintiff Lee by the Defendant, particularly in the manner in which the Defendant seeks to enforce and invoke the same here, would make a mockery of a substantial part of the Outfitters and Guides Act of the State of Idaho. From reading the entire Declaration of Policy as set forth in Section 36–2101, Idaho Code it is clear that it was intended to encourage the participation and enjoyment and use of the mountains, rivers and streams of Idaho, by both residents and nonresidents and to provide, among other things, for the safety and freedom from injury, of those participating. To permit such a document to be enforced would open the door to the extinguishment of every obligation by a licensed Outfitter or Guide which is provided for by law and is a part of the public policy of the State of Idaho. 57 *American Jurisprudence* 2d, Subject; Negligence, § 25 at page 369 speaks specifically to obligations such as this where statutory provisions are intended to protect the public from injury. The rule is stated in the following language:

It is well settled that statutory liability for negligence cannot be contracted away. Where an injury results from a <u>violation of a statutory duty</u> which establishes a certain standard of conduct for the protection and benefit of the members of a class, <u>an immunity contract or clause exculpating a defendant from liability for negligence is unenforceable as contrary to public policy.</u> (Underscoring supplied)

The Idaho Legislature recognized that the mountains, rivers and streams of Idaho were attractive to and should be enjoyed by both the residents of the state and nonresidents. It saw fit therefore in the self declared exercise of its police power to enact specific in depth legislation. The Legislature recognized the attraction of Idaho's mountainous areas. The Legislature saw that Outfitters and Guides were necessary to permit a large class of people to fully enjoy all the state's mountainous areas had to offer. The Legislature recognized that there was a growing business in the form of Outfitters and Guides who were conducting supervised expeditions for various sporting reasons in Idaho. The Legislature sought to make this growing business responsible and sought to provide for the safety of that class of persons who might use the services of Outfitters and Guides. Thus the Legislature enacted Title 36, Chapter 21, of the Idaho Code.

In the trial court the Defendant argued that it was not a common carrier and that no public duty was involved with respect to it's horse rental operation. Plaintiff admits that it makes no difference that the Defendant's horse rental operation was not a common carrier. The enactment of Title 36, Chapter 21, Idaho Code, regulating and licensing Outfitters and Guides makes it clear that the Defendant indeed has a pub-

**984**

lic duty which is expressly spelled out in the pertinent portion of the declaration of policy Section 36–2101, Idaho Code (Supra), wherein it states that the intent of the Legislation is for the explicit purpose of safeguarding the safety and freedom from injury or danger of persons employing the services of Outfitters and Guides. This question is addressed in the Restatement of contracts at Section 575, at pages 1080 and 1081, which provides in pertinent part as follows:

> ILLEGAL BARGAINS FOR EXEMPTION FROM LIABILITY FOR WILFUL OR NEGLIGENT MISCONDUCT.
>
> (1) A bargain for exemption from liability for the consequences of a wilful breach of duty is illegal, and a bargain for exemption from liability for the consequences of negligence is illegal if
>
> (a) * * * * * * * *
>
> (b) one of the parties is charged with a duty of public service, and the bargain relates to negligence in the performance of any part of its duty to the public, for which it has received or been promised compensation.

*American Jurisprudence* 2d recognizes the Restatement rule in above quote. In 57 *American Jurisprudence* 2d subject Negligence Section 27 that text recognizes that while the rule is inclusive of common carriers and other public utilities that it is also inclusive of other entities having a "duty of public service". The rule is stated at 57 *American Jurisprudence* 2d at page 372 in the following language:

> The application of the Restatement rule as a declaration of basic principles is not limited to the contracts of enterprises which are necessarily or ordinarily classified as public utilities or public service companies, but has been extended to the exculpatory contracts to those who may assume a "duty of public service" at least to certain segments of the public, such as *innkeepers*, and *to warehousemen*. Also, insofar as such an agreement relates to negligence in the performance of any part of the duties for which compensation is received, the principles implicit in the rule have been applied to those engaged in enterprises as

diverse as the operation of airports, or the business of supplying bottled gas.

Certainly if innkeepers, warehousemen, operators of airports and suppliers of bottled gas are held to have a "duty of public service" so also would Outfitters and Guides particularly where the Legislature of this state has spoken on the subject.

The Plaintiff asserts that if that is the case that the various statutes that have been enacted by the Idaho Legislature regulating businesses, professions and occupations are meaningless and serve no public purpose. Followed to its logical conclusion this would include not only Outfitters and Guides but doctors, lawyers, engineers, architects and real estate brokers. With respect to the legislation enacted, regulating Outfitters and Guides, the rule rendering exculpatory clauses unenforceable has very obvious application. Its Declaration of Public Policy has the language "for the explicit purpose" of safeguarding safety and freedom from injury. It is enacted pursuant to the police power of the state. If the statutory mandate can be avoided by an exculpatory clause, unquestionably, every person licensed under the Outfitters and Guides Act, could by contract, absolve himself completely of all obligations to the public and there would be no need for the enactment of that legislation.