Welsh, J.
This civil action arises from an agreement by Baypark Development, Inc. to construct a residence for the plaintiffs. The individual defendants Gabriel and Preston are the sole principals in Baypark (hereinafter, the Corporation). Claims were asserted for breach of contract, breach of warranty and unfair and deceptive acts or practices resulting in damages to the plaintiffs in violation of G.L.c. 93A.
The trial judge found for the plaintiffs against all three defendants and awarded damages in the sum of $9,500, which sum was augmented by reason of attorneys’ fees, interest and costs to $21,093.63.
*16 The principal contention of the appellant is the assertion that the district courts lack subject matter jurisdiction to “pierce the corporate veil” and hold liable the principals in the corporation. The argument is that since the District Courts do not possess general equity jurisdiction, there exists no authority to apply the doctrine of disregarding the corporate entity and hold the corporate principals liable as individuals.
1. The appellees by motion request dismissal of the appeal by reason of various procedural missteps on the part of the appellant. It appears that a timely notice of appeal was filed as required by Rule 4(a), Dist./Mun. Cts. R. A D. A. The principal faux pas is the failure to file and serve a “Designation for Transcription” in accordance with Rule 8C(c) (1), Dist./Mun. Cts. R. A D. A Where the entire cassette is designated for transcription, usually the appellee is not harmed by such failure since such transcript is available to both sides. But where, as here, less than the entire transcript is reproduced, the appellee has the right to know in advance of transcription what portions have been designated for transcriptions so that a determination can be made by the appellee if other portions should be designated. Rule 8C(c) (2), Dist./Mun. Cts. R. A. D. A While such failure to designate is not to be condoned and might in other circumstances warrant dismissal of the appeal, we do not perceive that in this case the appellee was significantly disadvantaged or preju-dicially harmed by reason of such failure. The fundamental issue presented by this record concerns the jurisdiction of the district court in an action at law to apply the principles associated with the doctrine of disregard of the corporate entity in appropriate circumstances and to hold the principals of the corporation personally liable.
2. Appellant does not cite any cases in this Commonwealth holding that the doctrine of “piercing the corporate veil” may be applied only in courts having general equity jurisdiction;[3] nor have we been able to discover any such cases. On the contrary, there are a number of cases in which the doctrine has been applied in actions at law. For example, in My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614 (1968), the corporate entity was disregarded in a tort action for conversion. That case contains a collection of authorities discussing some circumstances in which the corporate entity might be disregarded. Id. at 619 n. 7. A corporation or other persons controlling it and directing or participating in its operations may become subject to civil liability on principles of agency or causation. Id. at 618. For example, where there is common control of a group of separate corporations engaged in a single enterprise, failure to make clear which corporation is taking action in a particular situation and the nature and extent of that action, or to observe with care the formal barriers between corporations with a proper segregation of their separate businesses, records and finances may warrant some disregard of the separate entities in particular situations in order to prevent gross inequity. Id. at 620. Manifestly, ownership of all stock in the corporation by the individual defendants does not, without more, afford a basis to disregard the corporate entity. Albert Richards Co., Inc. v. Mayfair, Inc., 287 Mass. 280, 288 (1934). In W.W. Britton, Inc. v. S.M. Hill Co., 327 Mass. 335 (1951), disregard of corporate entity was permitted in a contract action in quantum meruit where the affairs of two corporations were so closely related that the nicety of which corporations received the benefit need not be considered. Id. at 339.
Without attempting to exclude other circumstances to be weighed for the disregard of corporate entity, the factors commonly enumerated are: (1) common own *17 ership; pervasive control; confused intermingling of business assets or management; thin capitalization; non-observance of corporate formalities; absence of corporate records; no payment of dividends; insolvency at the time of litigated transaction; siphoning away of corporate assets by dominant shareholders; non-functioning of officers and directors; the use of the corporation for transactions of dominant shareholders; and the use of the corporation in promoting fraud. See Pepsi-Cola Metropolitan Bottling Co. v. Checkers, Inc., 754 F. 2d 10, 14-16 (1st Cir. 1985). Accord: Evans v. Multicon Construction Corp., 30 Mass. App. Ct. 728, 733 (1991).
The trial judge considered and addressed the relevant factors in carefully crafted special findings of fact, as follows:
“The Court has considered the following factors in determining whether to hold the individual defendants liable in this case: (1) Common Ownership: defendant Gabriel held the offices of President and Treasurer of Bay Park Development, Inc. and served as one of two directors for this corporation. Gabriel held all officer positions at Bay Park Homes, Inc. and was its sole director. The link between these two corporations and their relationship to the property which is the subject of this section will be discussed below. (2) Pervasive Control: for all practical purposes, Gabriel and Preston ran the day-to-day affairs of Bay Park Development. Preston was Gabriel’s “partner” in the enterprises to the extent each had an equal stake in the corporate assets. There were no other shareholders, officers or directors to whom the defendants were accountable. There were no other employees. Other than the corporate form, Gabriel and Preston personified the acts and conduct of Bay Park Development, Inc. (3) Intermingling of Assets: During the two year “dry basement” warranty period, defendant Gabriel applied for return of the bond in the total amount of $4,600.00 from the Conservation Commission regarding the work done on and adjacent to the plaintiffs’ property. Because Bay Park Development, Inc.’s bank account had been closed, defendant Gabriel had the Conservation Commission make the reimbursement check payable to Bay Park Homes, Inc. which in turn disbursed the funds equally to Gabriel and Preston. Both “Bay Park” corporations had the same business address and telephone number. The Court infers and thus finds that a portion of the assets disbursed from Bay Park Development, Inc. to Gabriel were used by Gabriel to fund and incorporate Bay Park Homes, Inc. (4) Insufficient Capitalization and (5) Siphoning of Corporate Funds by the dominate shareholders: as soon as the plaintiffs closed on their house, notwithstanding the express two-year warranty for a dry basement, the defendants Gabriel and Preston caused all the assets of the corporation to be equally distributed to them and the corporation’s bank account to be closed. This action effectively stripped the warranty of any worth, assuring that the distributed assets could not ordinarily be reached, and enriched the individual defendants beyond the amount they would have received had the warranty been honored. (6) NonObservance of Corporate Formalities and (7) Absence of Corporate Records: Bay Park Development, Inc. filed Articles of Organization and Bylaws with the State Secretary’s Office. Beyond that, the officers and shareholders observed no formalities with respect to corporate conduct there were no meetings, no annual reports, no records of votes, and no formal dissolution of the corporation after its bank account was closed and it ceased doing business. (8) Non-payment of Dividends: with the exception of disbursing all corporate assets equally to its shareholders after closing on the Mounts’ house, Bay Park Development, Inc. did not pay dividends to its shareholders. (9) Use of Corporation for Shareholder Transactions: as noted above, Bay Park Development, Inc. existed effectively as the stakeholder of a bank account through which funds passed from home buyers.to defendants Gabriel and Preston. When the subdivision was completed, and money paid into the bank account, all corporate funds were disbursed equally to the indi *18 vidual defendants without regard to the corporate warranty obligations.”
3. The assertion that the district courts lack jurisdiction to adjudicate a fraudulent conveyance action under G.L.C. 109A is correct. See Ryan v. Kehoe, 408 Mass. 636, 641-642 (1990); J. NOLAN & L. SARTORIO, EQUITABLE REMEDIES. 31 M.P.S. §363 n. 3. A fortiori, a creditor’s action to reach and apply under .G.L.c. 214, §3, clause 8, is not within the jurisdiction of the district courts. See Foster v. Evans, 384 Mass. 689-690 (1981). But the award of money damages is clearly within the parameters of district court jurisdiction. The findings as to damages and the judgment thereon are valid and need not be set aside because a “reach and apply” analysis was offered by the trial judge as an alternative basis.
4. We need not discuss whether there was sufficient evidence to warrant a finding the corporation liable for breach of warranty as to certain aspects of the work, in the absence of requests for rulings specifically keyed to the sufficiency of evidence as to those findings. See Baybank v. Pandolflno, 1996 Mass. App. Div. 84-85. No requests for rulings were reproduced in the record appendix. See Tynan v. Nelson, 1996 Mass. App. Div. 60.
Furthermore, the defendants’ brief states that they “defer to the finding of basic facts contained throughout Pg. 1-13...” of the court’s memorandum of findings.
We determine there was no prejudicial error and order that the appeal be dismissed.
So ordered.

 There are dicta in some Massachusetts cases characterizing the remedy of “piercing the corporate veil” as equitable in nature. See e.g. Leventhal v. Atlantic Finance Corp., 316 Mass. 194, 201 (1944). It does not follow that it is not available in an action at law.